HANNAH E. SMITH *vs.* HENRY WENZ.

Suffolk.    January 12, 1904. — February 27, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Landlord and Tenant.    Contract.*

A lease of a portion of a building to a manufacturer of confectionery included the use of steam for heating and for power, providing for an additional payment at a certain rate if more than three horse power was furnished. It further was provided, that the lessee should have the "privilege to connect a pipe to the steam supply pipe to draw steam for use in the confectionery or in his business, when steam is in the supply pipe, provided same can be done without extra expense to lessor, or those representing her, either for making changes or for supplying steam." At the request of the lessee the engineer of the lessor connected the cooking apparatus of the lessee with the pipe carrying the live steam from the boiler to the engine, the lessee understanding that this was the connection to which he was entitled under the provision of the lease. For more than four years monthly rent bills were presented and paid with no demand of payment for cooking steam. Thereafter upon a close examination of the steam pipes, the lessor discovered that the steam supplied for cooking had caused extra expense, and brought an action for compensation for the steam furnished for cooking during the period of the lease. It was found as a fact that the plaintiff by the exercise of reasonable care could have known the facts about the connection and the use. *Held,* that the meaning of the clause of the lease was that the defendant should be entitled to have furnished for cooking purposes steam, which in relation to the entire plant and the defendant's business, should be of no considerable cost to the plaintiff, that this was a matter peculiarly within the knowledge of the plaintiff, that the defendant was entitled to notice that a charge was to be made for the steam, and that the plaintiff could not recover for steam furnished for cooking purposes before such notice was given.

CONTRACT by the owner of a building on Harcourt Street in Boston, used for manufacturing purposes, for compensation for steam power, cooking steam and water alleged to have been furnished to the defendant, a manufacturer of confectionery. Writ dated February 7, 1903.

In the Superior Court the case was tried before *Mason*, C. J., without a jury. He made the findings and rulings stated in the opinion, and ruled that the plaintiff could not recover for cooking steam furnished and used. The judge found for the plaintiff in the sum of $1,322.69, and at the request of the plaintiff reported the case for determination by this court.

If the ruling that the plaintiff was not entitled to recover anything for cooking steam was right, judgment was to be entered for the plaintiff on the finding of the judge for $1,322.69, and interest thereon from July 9, 1903. If this ruling was wrong, and the plaintiff was entitled to recover for the cooking steam furnished, judgment was to be entered for the plaintiff for the additional sum of $1,927 and interest thereon from July 9, 1903.

*G. W. Anderson*, for the plaintiff.

*S. C. Bennett*, for the defendant.

HAMMOND, J. This is an action of contract to recover for steam power, cooking steam and water alleged by the plaintiff to have been supplied by her to the defendant. By the terms of the lease the defendant, a manufacturer of confectionery, was to hold as tenant certain portions of a building owned by the plaintiff " including steam necessary to heat the existing heating apparatus during business hours in cold weather, . . . together with three horse power to be furnished by the lessor to a pulley on the premises during ordinary business hours." The lessee was " to put up and maintain his own shafting, belting and machinery"; and it was further provided that "if the lessor shall furnish and the lessee shall use power in addition to said three horse power then the lessee " agrees to pay for such additional power " so used at the rate of $95 per year, per horse power in monthly proportions on the days and as hereinafter provided for rent." It was still further provided that the lessee was to have the " privilege to connect a pipe to the steam supply pipe to draw steam for use in the confectionery or in his business, when steam is in the supply pipe, provided same can be done without extra expense to lessor, or those representing her either for making changes or for supplying steam." The lessee was to pay rent at the rate of $2,840 a year, in equal monthly payments of $236.67 on the fifteenth day of every month, and

also an additional sum as above stated for extra horse power. The lease contained certain other provisions, but they do not seem to have any bearing on the question before us.

It therefore appears that ordinarily steam was used in this building both for heating and for power, and that, to the extent named in the lease, the lessee was entitled to use it for both purposes. It further appears that in the business of manufacturing confectionery steam could be used for "cooking," and consequently there was given to the defendant the right under certain conditions to draw steam from the supply pipe for that purpose. For this no extra compensation was to be paid. It was one of the rights the payment for which formed a part of the sum named as rent.

The lease was dated May 15, 1898, and on that day the defendant began his occupation of the tenement. Shortly after this, at the request of the defendant, the system of pipes running to his various heating kettles was connected with the pipe carrying the live steam from the boiler to the engine. The only question before us is whether the plaintiff is entitled to recover anything for this cooking steam.

The connection was made at the request of the defendant, and, as he supposed, in order that he might enjoy the privilege given him by the lease to use cooking steam. Neither in making the request nor in using the steam did he suppose or have any reason to suppose that he was using any cooking steam except that furnished under the terms of the lease. Nor does it appear that the plaintiff's engineer who made the connection supposed that he was doing anything not provided for by the lease. Whether the term "steam supply pipe" means on the one hand the pipe carrying the waste steam, after the same had been used by the engine, through the building where it was used for heating purposes, as contended by the plaintiff, or, on the other, the pipe carrying "live steam" from the boiler to the engine, as contended by the defendant, it is certain that the connection was such as the defendant thought he was entitled to have, and that it was made by the engineer who, as to all matters connected with the steam and mechanical appliances, had general charge as the agent of the plaintiff. It further appears that the rent bills were presented monthly and were promptly paid,

and that no demand was ever made upon the defendant for payment for cooking steam until the fall of 1902, when, owing to the extraordinary price of coal, the plaintiff made close examination into the matter of steam and discovered the facts. The plaintiff's husband was her general agent in the management of the building, was frequently in and about it, including the leased premises, and he generally presented the monthly bills and received payment therefor. The judge found that he, in the exercise of reasonable and proper care, should have known the facts about the connection and the use.

The right to the use was conditional, it is true, but we agree with the trial judge that the condition was not that the steam which the defendant was to have from the plaintiff's pipes should cost absolutely or mathematically nothing, but that the defendant should be entitled to have furnished by the plaintiff steam which, having relation to the entire plant and the defendant's business, should be of no considerable cost to the plaintiff. Whether at any time the steam used by the defendant was of any considerable cost to the plaintiff, or, in other words, whether at any time the defendant was using steam in violation of this condition was a matter within the peculiar knowledge of the plaintiff, and not of the defendant.

Here, then, is a case where a defendant, intending to act under the terms of his lease and not otherwise, asks for the connection in order that he may use the steam, the connection is made by the engineer of the plaintiff for that purpose, and the defendant, acting all the time in good faith, proceeds to use the steam. There is no fraud or secrecy on his part. He believes, and has reason to believe from the conduct of the plaintiff and her husband, that all this is known to her and that she acquiesces. Under these circumstances justice to the defendant requires that he should be notified that, in the opinion of the plaintiff at least, the use of the steam is no longer within the terms granted in the lease, so that the defendant may choose whether to discontinue the use, or try to make some new arrangement. And the ignorance of the plaintiff due to her own want of proper care in the management of her business, and not in any way to the conduct of the defendant, does not excuse her from giving such notice. The ruling that the plaintiff cannot

recover for steam furnished before such a notice was right.    See *Boston Ice Co.* v. *Potter*, 123 Mass. 28.    In accordance with the terms of the report there must be ·

<em>Judgment on the finding for $1,322.69 and interest.</em>