JOHN L. DOUGLAS & another *vs.* CITY OF LOWELL.

Middlesex. January 8, 9, 1907. — February 27, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Contract*, Construction, Implied: common counts, Performance and breach. *Municipal Corporations. Evidence.*

A contract with a city for laying upon a bridge a tar covering which was to be the foundation for wooden block paving described the required work as follows: " The flooring of the roadway of the bridge is to be covered with waterproofing, composed of two layers of a first quality, heavy tar roofing felt, of a brand satisfactory to the superintendent of streets. The layers are to be put on crosswise of bridge, each strip to lay over the previously laid strip, one-half its width, the lower strip being thoroughly mopped with hot roofing pitch. The layer as a whole is then to receive a thorough mopping with hot pitch before second layer is applied. The second layer is then to be applied in the same manner as the first and the whole finally to receive a heavy coating of pitch put on by flowing instead of mopping." *Held*, that this contract required the laying of two layers of tar roofing felt, each layer to consist of two thicknesses of felt.

Where a city has authorized its mayor and its superintendent of streets jointly to make a contract in behalf of the city for covering a bridge with tar roofing felt preparatory to paving it with wooden blocks, and they make such a contract in writing, the superintendent of streets alone has no authority to make a subsequent oral agreement with the contractor as to what is the true construction of the contract.

One who refuses to complete work which he has contracted to perform on the real estate of another unless his construction of the contract, which afterwards turns out to be wrong, is adopted, can recover nothing for the work he has done or for the value he has added to the real estate.

The use by the owner of real estate of a structure on his land, upon which work has been done by a contractor who refused to complete his contract, is not an acceptance of the work analogous to the retention of a chattel which can be returned, and gives the contractor no right of action.

The use of a bridge by the public is not an acceptance of work done upon it by a contractor who voluntarily failed to complete his contract, and gives him no right of action against the city with which the contract was made.

Under the rule which seems always to have been assumed in this Commonwealth, if a person without authority to do so agrees that a city shall take and pay for certain materials and the city uses them, the fact that the city has benefited by the use of the materials gives the owner of the materials no right of action.

In an action against a city on a contract to do certain work upon a bridge, in which it appeared that the plaintiff refused to complete the work required by the contract unless a certain construction of the contract, which afterwards turned out to be wrong, was adopted, the plaintiff testified that the defendant's superintendent of streets, who jointly with its mayor had been authorized to make the contract, told the plaintiff on the day before his refusal to go on with the work that he had let the work to another contractor, and a contract with this other contractor, dated the day after the plaintiff's refusal to go on with the work, was offered in evidence by the plaintiff and was excluded by the judge. It appeared that on the morning of the day following the statement of the superintendent of streets which was testified to by the plaintiff, the plaintiff was at the bridge with his men and materials ready to go on with the work if his construction of the contract was adopted, and that the defendant gave him until one o'clock on that day to decide whether he would go on with the work in accordance with the defendant's rightful construction of the contract, which he refused to do. The plaintiff excepted to the exclusion of the contract with the other contractor, contending that it should have been admitted in evidence because of the statement of the superintendent of streets. *Held,* that the contract offered in evidence, dated the day after the plaintiff's refusal, did not tend to prove that the contract had been given to the other contractor on the day before such refusal, and that the statement of the superintendent of streets, if it bound the defendant, was immaterial, as the plaintiff did not act on it, but appeared the next morning ready to go on with the work and was given until one o'clock to decide whether to do so.

In an action against a city on a contract to do certain work upon a bridge it appeared that the plaintiff refused to go on with the work required by the contract unless a certain construction of the contract, which afterwards turned out to be wrong, was adopted, and that the defendant gave to the plaintiff a certain time to decide whether he would go on with the work in accordance with the defendant's rightful construction of the contract. There was evidence that the plaintiff when asked whether he would complete the contract according to the defendant's construction of it said " I am ready and willing to carry out my contract." The plaintiff contended that this warranted a finding that he was ready and offered to complete the contract on the defendant's construction of it. *Held,* that the words of the plaintiff could not be given this meaning.

CONTRACT, with four counts which are described in the opinion, on page 272. Writ dated June 15, 1905.

The contract in writing of which a copy was annexed to the declaration was as follows:

"Lowell, Mass., Nov. 17, 1904.

"Specification for furnishing and laying about 2652 square feet of water-proof covering for the floor of the Aiken Street Bridge.

"The flooring of the roadway of the bridge is to be covered with waterproofing, composed of two layers of a first quality, heavy tar roofing felt, of a brand satisfactory to the Superintendent of Streets. The layers to be put on crosswise of bridge,

each strip to lay over the previously laid strip, one-half its width, the lower strip being thoroughly mopped with hot roofing pitch. The layer as a whole is then to receive a thorough mopping with hot pitch before second layer is applied. The second layer is then to be applied in the same manner as the first and the whole finally to receive a heavy coating of pitch put on by flowing instead of mopping. The pitch is to be of a brand and consistency satisfactory to the Superintendent of Streets. The felting is to be turned up at the curb timbers at least six (6) inches and secured by a zinc strip three (3) inches wide, thoroughly nailed.

" All materials and workmanship shall be to the entire satisfaction of the Superintendent of Streets or his representatives.

" The work is to be commenced within twenty-four hours after notification from the Superintendent of Streets, and to progress in such order as may be directed by him.

" I will furnish labor and material according to the above specifications for the sum of six hundred eighty-nine dollars.

" J. L. Douglas & Co.

" Approved
      " Charles E. Howe
                  " Mayor.       Accepted by
                              " Fred'k W. Farnham,
                                    " Acting Sup't of Streets."

At the trial in the Superior Court *Hardy,* J. ordered a verdict for the defendant; and the plaintiffs alleged exceptions. The course of the trial and the evidence material to the points raised by the exceptions are described in the opinion.

*W. H. Bent,* for the plaintiffs.

*J. G. Hill,* for the defendant.

LORING, J. On Thursday, November 17, 1904, a contract in writing was made between the defendant and the plaintiffs for covering Aiken Street bridge with two layers of tar roofing felt, each layer to consist of two thicknesses of such felt, each thickness to be mopped in hot pitch and each layer to be also mopped with hot pitch after the laying of such layer was completed, the felting to be turned up at the curb timbers and secured by zinc. The mayor and acting superintendent of streets were authorized to make this contract in behalf of the city, and it was signed by them in the city's behalf. The work was to be

done to the satisfaction of the superintendent of streets or his representatives.

It appeared that this covering was to be the foundation for wooden block paving which was to be laid by the city. The bridge was then closed to travel and the work had to be done in a hurry.

The plaintiffs began work on the following day, Friday, November 18, and on that day put down one layer of two thicknesses about one hundred feet in length. One Carney, an assistant in the city engineer's office, was detailed as inspector of the work. Just before the plaintiffs stopped work on Friday afternoon, Carney called their attention to the fact that the contract called for two layers each of two thicknesses. The plaintiffs asserted that the contract called for only one layer of two thicknesses. Carney and Charles T. Douglas, one of the plaintiffs, then called on Farnham, the acting superintendent of streets, and they had another conference at ten o'clock the next (Saturday) morning. The testimony was conflicting as to what took place at these interviews. On that day, Saturday, November 20, the plaintiffs laid the second layer on the one hundred feet already laid. On Monday the plaintiffs went to the bridge ready to go on with the work and found one Smith there ready to go on with the same work. Farnham came with the city solicitor, and, after a conference in which the plaintiffs insisted that their construction of the contract was correct and that they were ready to go on with the work as they construed the contract, Farnham served the plaintiffs with a written notice in which he demanded that the plaintiffs should go on with the work as the city construed the contract. He also notified them by word of mouth that they must decide by one o'clock to go on or not to go on. At that hour the plaintiffs persisting that they were right in their construction of the contract and would not go on with the work on the other basis, they were notified to leave and left.

One of the plaintiffs, Charles T. Douglas, testified that they had twelve barrels of pitch on the bridge, worth $24, and some zinc worth $1.40 when they left; that Carney asked him to leave it there and said " We will pay you for it "; that thereupon he left the pitch and zinc there and " they were used on the bridge."

Douglas further testified that before he signed the contract he asked Farnham whether it called for two or four thicknesses of felting and that Farnham told him it called for two only; that at the interview between Carney, Farnham and himself on Friday evening Farnham again said that the contract called for only two thicknesses. He also testified that on Saturday morning Farnham told him that the city engineer who drew the contract said that it called for four thicknesses and that the work would have to be done that way; that Farnham directed him to put on two thicknesses more, and said that the city would pay for the additional two thicknesses as an extra.

Farnham testified that at the meeting on Friday evening he told the plaintiff Charles T. Douglas that the contract called for four thicknesses, and that at the meeting at ten o'clock the next morning he told him that the work must go ahead as the city's men were waiting to lay the blocks; and since there was a difference as to the construction of the contract he wanted Douglas to finish the one hundred feet with four thicknesses, and if he turned out to be right as to the construction of the contract he would pay him for the additional two thicknesses as an extra; and if the city was right as to the construction of the contract he would receive no extra payment, and that he would consult the city solicitor. He also testified that " No one but myself was authorized to make purchases of material and supplies for my department. I did not order from Mr. Douglas pitch, zinc or tar roofing felt nor did I agree to pay him for any of them."

On the evidence the judge directed a verdict for the defendant, and the case is here on an exception to that ruling.

The declaration contained four counts. The first count is for damages for being prevented from performing the written contract. The third count (for the same cause of action) alleges the making of the written contract and an oral agreement that it meant two thicknesses of felting, and seeks to recover damages for being prevented from performing that contract. The second count is a common count for the pitch and zinc left by the plaintiffs at Carney's request. The fourth count is a common count for the value of the work done and materials furnished by the plaintiffs in laying felting on the bridge.

1. There was nothing for the jury on the first count. By the

true construction of the written contract the plaintiffs' men were bound to put down two layers of two thicknesses each.

2. There was nothing for·the jury on the third count. It appeared that the authority to make the contract in question was given to the mayor and Farnham jointly. The plaintiffs' testimony went no further than to fix on Farnham statements as to the true construction of the contract. That cannot affect the defendant's liability under the written contract made in its behalf by the two. No case therefore was made out on the third count.

3. One who contracts to erect a structure on land of the defendant or to do work on one already erected and voluntarily refuses to complete his contract cannot recover under a common count for the value of the work done in partial performance. *Homer* v. *Shaw*, 177 Mass. 1. See also in this connection *Sipley* v. *Stickney*, 190 Mass. 43.

The plaintiffs contend that the rule is otherwise, and that a plaintiff contractor under these circumstances can recover a reasonable price for the work done subject to reduction by any damages the defendant has suffered from the contractor's failure to perform his contract; and cites in support of that contention *Hedden* v. *Roberts*, 134 Mass. 38, 40; *Bee Printing Co.* v. *Hichborn*, 4 Allen, 63; *Bowker* v. *Hoyt*, 18 Pick. 555.

*Bowker* v. *Hoyt* was a case where the plaintiff delivered four hundred and ten bushels of corn and offered to deliver ninety more, asserting that the contract was for the delivery of five hundred bushels in all. The defendant contended that the contract was for one thousand bushels in all, refused to accept ninety only, and kept the four hundred and ten. The jury found that the defendant was right in his contention that the contract was for one thousand bushels. This court held that the retention of the four hundred and ten bushels by the defendant after the dispute arose was ground for charging him with their reasonable value subject to reduction by damages suffered from the plaintiff's failure to deliver one thousand bushels. It is evident that there is this difference between the partial performance of a contract to deliver personal property and the partial performance of a contract to do work on a building, part of the defendant's real estate: When the contract is to deliver personal property,

the part delivered can be returned on the plaintiff's refusing to complete the delivery called for by the contract. In case the contractor refuses to complete the work which he has contracted to do on the defendant's real estate, the part done cannot be returned.

In *Bee Printing Co.* v. *Hichborn* the plaintiff sued for the reasonable value of publishing notices of the defendant's public auction sales for six months previous to April 20, 1861. The defendant set up a special contract to publish private and public sales for $200 per annum, and that the plaintiff refused to publish the private sales. It appeared that in July, 1860, the plaintiff refused to publish certain advertisements sent to it by the defendant, on the ground that the contract covered public auction sales only. The court held that the defendant was bound to pay a reasonable price for advertisements sent to the plaintiff by the defendant after that construction was asserted by the plaintiff, subject to such damages as the defendant suffered from breach of the contract. In the case at bar there was no request made by the defendant upon the plaintiffs to do work after the dispute arose as to the meaning of the contract. Charles T. Douglas testified that Farnham asked him to put on the second layer and that the city would pay for it. But as we have said, not only was there no evidence that Farnham had authority to bind the city, but it affirmatively appeared that he had not.

We do not understand Field, J. in *Hedden* v. *Roberts*, 134 Mass. 38, 40, to have laid down the general principle here contended for by the plaintiffs, to wit, that a plaintiff who voluntarily fails to complete work which he has contracted to perform on the real estate of the defendant can recover the reasonable value of the part performed. That is not the rule. It is settled in such a case that he can recover the reasonable value to the defendant resulting from the partial performance only when he has substantially performed the whole contract and has intended in good faith to perform the whole. The cases are collected in *Burke* v. *Coyne*, 188 Mass. 401, 405.

An owner of a house erected under a contract but not in compliance with the requirements thereof is not to be held to have accepted the work as a fulfilment of the contract by his occupying the house. The contractor in such a case cannot deprive

the owner of the use of the land on which the house is erected, and for that reason occupation of the house is not an acceptance. *Hayward* v. *Leonard*, 7 Pick. 181, 186. *Munro* v. *Butt*, 8 E. & B. 738, 753.

It is pointed out in *Hayward* v. *Leonard*, 7 Pick. 181, 184, 186, and in *Munro* v. *Butt*, 8 E. & B. 738, 753, that there is a distinction between the retention of a chattel which can be returned and the occupation of a building upon which work has been done which cannot be taken out without doing injury to the building. Field, J. in *Hedden* v. *Roberts*, 134 Mass. 38, seems to have held that a monument put up in a graveyard belongs to the same class as chattels. The case has not been cited on the point here in question since it was decided. In the case at bar no acceptance resulted from the use of the bridge by the public. See *Taft* v. *Montague*, 14 Mass. 281. This case comes within the general rule stated above in *Hayward* v. *Leonard* and *Burke* v. *Coyne*, *ubi supra*, and not within *Hedden* v. *Roberts*, 134 Mass. 38, 40.

4. We do not understand that the plaintiffs contend that they are entitled to recover solely because their pitch and tar were in fact used in the laying of the blocks by the city employees and because to that extent the city is better off. It seems always to have been assumed that a town cannot be held on that ground. See *Taft* v. *Montague*, 14 Mass. 281; *Keyes* v. *Westford*, 17 Pick. 273; *McCormick* v. *Boston*, 120 Mass. 499. See also *Goff* v. *Rehoboth*, 12 Met. 26; *Upjohn* v. *Taunton*, 6 Cush. 310; *Butler* v. *Charlestown*, 7 Gray, 12; *Brown* v. *Melrose*, 155 Mass. 587.

The plaintiffs' contention is that Farnham, who had authority to purchase materials, took the pitch and zinc and used it for the benefit of the defendant. But there is no evidence that Farnham did take the pitch and zinc or either of them, or that he knew that they were taken or used. Carney, the defendant's only witness on the point, testified that this pitch was left in exchange for pitch lent to the plaintiffs by the defendant's workmen in the course of the work. So far as the evidence goes no one else on the part of the defendant knew anything about the pitch or zinc.

The plaintiffs were not entitled to go to the jury on the promise

of Carney to pay for the zinc and the pitch. There was no evidence that he had authority to buy material for the defendant, and there was uncontradicted testimony that Farnham alone had that authority.

5. The contract with Smith was dated November 22, the day after the plaintiffs refused to go on with the work. They contend that it should have been admitted in evidence because Farnham told Charles T. Douglas on Sunday, November 20, that he had let the work to Smith. The contract which was excluded did not prove that fact. This statement of Farnham (if it binds the defendant) is not material. The plaintiffs did not act on it but were ready with their men and materials at the bridge on Monday morning, and on their own testimony were given until one o'clock on Monday to decide whether to go on or not to go on.

6. The last contention made by the plaintiffs is that there was evidence on which the jury were warranted in finding that on Monday they were ready and offered to complete the contract work on the defendant's construction of the contract. This contention is based on the fact that Charles T. Douglas on that day, whenever asked whether he would complete the contract by laying two layers of two thicknesses each, said: "I am ready and willing to carry out my contract." The plaintiffs had previously taken the position that under the contract all they were bound to do was to put down one layer of two thicknesses. From that position they never receded. His dogged repetition of the statement that he would carry out his contract when asked if he would lay four thicknesses under these circumstances could have but one meaning.

*Exceptions overruled.*