WILL T. S. BARTLETT *vs.* CITY OF LOWELL.

Middlesex. January 12, 1909. — February 25, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Contract*, Validity, Implied in law. *Lowell. Municipal Corporations*, Officers and agents. *Agency*, Ratification. *Public Officer.*

The superintendent of streets of Lowell has no authority to make a contract with the owner of real estate whereby such owner agrees to sell gravel from his land to the city for use in repairing the city streets and the city agrees to fill in all depressions on the same piece of land with street sweepings so as to bring the whole surface of the land up to a specified grade, since such contract provides for a purchase by the city of the gravel and for a disposition by the city of the sweepings, and the head of the department of supplies alone has authority, under § 3 of the charter of the city, St. 1896, c. 415, to make such sale, or, under § 3 of St. 1897, c. 95, to make such disposal; and if such a contract is made by the superintendent, it is invalid.

The mayor of Lowell has no power, under §§ 3, 7 of the city charter, St. 1896, c. 415, and St. 1897, c. 95, § 3, to make a contract either for the purchase of supplies for the city or for the sale or disposition of any of the personal property of the city, and therefore he cannot ratify a contract made without authority for such purposes by the superintendent of streets.

Where a person enters into a contract with a public officer, who undertakes to act for and to bind a municipal corporation, he is chargeable with knowledge of the extent of or lack of authority of the public officer to make such a contract.

Where one enters into a contract with the superintendent of streets of a city for

the purchase by the city of gravel to be used on its public streets and the sale by the city to him of street sweepings to be used in filling his land, knowing that the provisions of the city charter give to the superintendent of streets no power to make such a contract, he cannot, after the city has used the gravel in mending its streets and has been benefited thereby and has refused to furnish the street sweepings to him, recover from the city in an action of contract the reasonable value of the gravel.

Where one delivers gravel to a city, knowing that there is no valid contract with the city to pay therefor, he cannot, after the city has used the gravel in mending its streets, recover its reasonable value in an action of contract.

CONTRACT, as stated in the opinion. Writ in the Superior Court for the county of Middlesex dated January 1, 1908.

The case was tried before *King*, J. The facts are stated in the opinion. At the close of the plaintiff's evidence, the judge ordered a verdict for the defendant upon each count of the declaration; and the plaintiff alleged exceptions.

*F. E. Dunbar*, (*J. J. Rogers* with him,) for the plaintiff.

*J. G. Hill*, for the defendant.

LORING, J. The only exception in this case was taken to the ruling directing a verdict for the defendant.

The plaintiff introduced evidence that in the year 1903 he made a contract with the superintendent of streets of the defendant city, whereby he agreed to sell to the city, for use in repairing the city streets, all the gravel above a specified grade that there was on a parcel of land owned by him, and the city agreed to fill all depressions on said parcel of land with street sweepings so as to bring up the whole surface to the specified grade; that in pursuance thereof the city took from his land 17,528 cubic yards of gravel, worth from thirty to fifty cents a cubic yard, and furnished but 500 of the 20,271 cubic yards necessary to fill the depressions and to bring the surface of the plaintiff's land to the grade specified; and that the remaining 19,771 cubic yards which the defendant city failed to supply would cost him eighty cents to one dollar a cubic yard.

The plaintiff's counsel in his argument has relied on the fact that in December, 1905, the plaintiff wrote to the mayor, complaining that the agreement stated above had not been kept by the superintendent of streets, and that in answer the mayor wrote to him on the same day that the matter would be called to the attention of the superintendent of streets.

The declaration originally contained three counts. The first

was for breach of the contract stated above, and the second was a common count for gravel sold. The third, in tort, was waived.

1. The superintendent of streets had no authority to make the contract declared on in the first count, and the mayor had no authority to ratify it if what he wrote on December 27, 1905, could be taken to be a ratification.

The principal, or at least one of the principal, changes made in the government of the city of Lowell by the new charter granted in 1896 (St. 1896, c. 415), was the creation of a department of supplies, with a chief elected annually by the voters of the city subject to suspension or removal for such cause as the mayor might deem sufficient (to be stated in the order of suspension or removal), but not otherwise.

The provision of the statute in this connection is this: "All material and supplies for the city shall be purchased by the chief or head of such department, subject to the approval of the mayor." It is also provided that "so far as is practicable" such purchases shall be made after public advertisement and under contract approved by the mayor. St. 1896, c. 415, § 3. It is further provided in § 7 that "Neither the city council nor either branch thereof, nor any committee or member thereof, shall directly or indirectly take part in the employment of labor, the purchase of material, the construction, alteration or repair of any public works or other property, or in the care, custody or management of the same, or in general in the expenditure of public money or in the conduct of the executive or administrative business of the city, except as may be necessary for defraying the contingent and incidental expenses of the city council or of either branch thereof; nor shall they or either of them take part in the making of contracts."

The change made by the new charter of the defendant city as to the purchase of material and supplies was considered by this court in *Muldoon* v. *Lowell*, 178 Mass. 134. It is there pointed out that immediately before the granting of the new charter all material and supplies were purchased by the heads of the several departments under the direction of the appropriate standing committee of the city council. It is plain that the change made by the new charter in regard to the purchase of material and supplies was revolutionary, and that these provisions of the

charter should receive a broad construction. For that reason we cannot adopt the construction contended for by the learned counsel for the plaintiff, to wit: that the word "purchase" should be limited to a purchase for money, excluding a purchase where the property bought is to be paid for in kind; and that the word "supplies" should be limited to articles of food, and the word "material" to "that which the city has occasion to have on hand for the manufacture of other things." On the contrary, we are of opinion that a purchase of gravel to be taken away by the city and used in repairing the city streets, to be paid for by other filling deposited on the lot in question by the city, is a purchase of material within St. 1896, c. 415, § 3.

St. 1897, c. 95, § 3, puts a further difficulty in the way of holding the contract, which the superintendent of streets undertook to make to be a valid one. It is there provided that personal property of the defendant city can be sold and disposed of only by the head of the department of supplies, upon the recommendation of the mayor and the head of the department to which such property belongs. It would seem that the filling which the superintendent of streets undertook to furnish to the plaintiff could be disposed of only by the head of the department of supplies upon recommendation of the mayor and the superintendent of streets.

It follows that the contract here in question is not a contract which the superintendent of streets could make under § 6, providing that: "The heads of the several departments and offices shall have the general charge and management of all matters pertaining to their respective departments, and shall make and execute all contracts necessary therefor, except for the purchase of material and supplies."

Neither can we adopt the contention that the contract was ratified by the mayor's letter of December 27, 1905. It is hard to see how that letter could be taken to be a ratification if the mayor had had the authority to ratify the contract. But that need not be decided, for the mayor had no authority to ratify the contract. The only power which the mayor originally had in the matter of purchase was to approve a contract made by the chief of the department of supplies, and in the matter of a sale or disposition of filling to join with the superintendent of streets

in recommending the sale or disposition by the chief of the department of supplies. His power to ratify is no greater than his power to contract. *Boston Electric Co.* v. *Cambridge,* 163 Mass. 64, or, as it is put in *Wormstead* v. *Lynn,* 184 Mass. 425, 428, " to bind the public the body must act which by law can bind them." The case at bar comes within the decision made in *Wormstead* v. *Lynn,* 184 Mass. 425, and cases there cited.

It follows that the presiding judge was right in ordering a verdict for the defendant on the first count.

2. The plaintiff's other contention is that, the defendant city having had the benefit of the plaintiff's gravel, should pay the reasonable value of it. But we are of opinion that that is not so.

The plaintiff was chargeable with knowledge of the power of the superintendent of streets. Of that there is no doubt. *Boston Electric Co.* v. *Cambridge,* 163 Mass. 64. *Wormstead* v. *Lynn,* 184 Mass. 425. *Revere Water Co.* v. *Winthrop,* 192 Mass. 455.

The plaintiff therefore is in this position: He undertook to allow his gravel to be used in repairing the streets of the defendant city, under an arrangement with a person who to his knowledge (for he was chargeable with that knowledge) had no authority to act for the city in agreeing to make compensation therefor. The gravel in question had been used in mending the city streets before the action was brought. The plaintiff's contention is that on those facts the court should make the city pay to the plaintiff the reasonable value of the gravel.

If the court were to adopt that result it would be putting the seal of the law upon a plain evasion of St. 1896, c. 415, § 3 ; and if that be law all statutes imposing limitations upon the creation of municipal indebtedness can be evaded by a person who is not a contractor delivering personal property, and after that property has been used so that it cannot be restored, claiming to be paid the reasonable value of it.

In addition there is this technical answer to that contention, namely: The delivery of material to a defendant where it is known that no contract exists is not ground for recovery of any kind. The case comes within the principle of *Boston Ice Co.* v. *Potter,* 123 Mass. 28; *Pittsburgh Plate Glass Co.* v. *McDonald,* 182 Mass. 593 ; *Smith* v. *Wenz,* 185 Mass. 229. For decisions where that principle has been applied in cases where a munici-

pal body has had the benefit of the plaintiff's property under circumstances similar to the case at bar, see *Douglas* v. *Lowell,* 194 Mass. 268, and cases cited; *Dolloff* v. *Ayer,* 162 Mass. 569; *Agawam National Bank* v. *South Hadley,* 128 Mass. 503.

The plaintiff relies on *L'Herbette* v. *Pittsfield National Bank,* 162 Mass. 137, *Dill* v. *Wareham,* 7 Met. 438, and *Chapman* v. *County of Douglas,* 107 U. S. 348. What those cases decide is that if the gravel as gravel had been in the possession of the defendant when the action was begun, it would have had to return it or pay for it. But when this action was begun the gravel here in question no longer existed as gravel capable of being returned as such to the plaintiff. It had been used in repairing the city streets.

*Exceptions overruled.*