## GREAT NORTHERN RAILWAY COMPANY v. CITY OF MINNEAPOLIS.[1]

### May 2, 1919.

### No. 21,177.

**Appeal and error — review of findings of fact.**

1. A conclusion drawn by a trial court from evidential facts is one of fact and not of law and falls within the scope of the rule governing this court in weighing findings of fact. It will not be disturbed, unless manifestly contrary to the conclusion a reasonable mind might properly draw therefrom.

**Eminent domain — street widening.**

2. Under this rule the evidence is held to sustain findings that the name of the true owner of a tract of land could not have been readily ascertained by the city engineer or the city clerk of the city of Minneapolis, and that a list of landowners in the county auditor's office known as a "division record" is the only record in a public office in Hennepin county where the names of such owners could be readily ascertained.

[1]Reported in 172 N. W. 135.

**Same — widening street — notice to commissioners.**

3. Commissioners appointed to award damages for land taken in street widening proceedings, under G. S. 1913, §§ 1566-1572, do not represent the city, and notice to them is not notice to it.

**Appeal and error — issues in trial court.**

4. Neither the evidence nor the findings show that plaintiff was in actual possession of the strip of land taken in such proceedings, and hence the question of the effect of possession as notice of ownership under the statute referred to is not presented.

**Due process of law — law of the case.**

5. The decision upon the former appeal (136 Minn. 1) became the law of the case and disposes adversely of plaintiff's contention that it has been deprived of its property without due process of law.

After the former appeal reported in 136 Minn. 1, 161 N. W. 231, the case was tried before Dickinson, J., who made findings and as conclusions of law found that all of the requirements of chapter 185, Laws 1911, and chapter 345, Laws 1913, had been duly and regularly complied with; that the proceeding entitled "In the Matter of Laying Out, Widening and Opening Seventh Street North, in the City of Minneapolis, from Hennepin Avenue to Plymouth Avenue, Special Street Acquisition and Improvement No. 57," was in all respects due and valid, and ordered judgment in favor of defendant. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*M. L. Countryman* and *Cobb, Wheelwright & Dille,* for appellant.

*C. D. Gould, R. S. Wiggin* and *W. G. Compton,* for respondent.

LEES, C.

This is an appeal from a judgment for defendant in an action brought to enjoin the appropriation for street purposes of a strip of land in the city of Minneapolis of which plaintiff and one George B. Harris are the owners.

The case was here before on appeal from an order denying an application for a temporary injunction, and is reported in 136 Minn. 1, 161 N. W. 231. Subject to one modification and with the additions presently to be stated, the material facts are set forth in the opinion of the court on the former appeal.

It appears that H. K. Feye did not own any interest in the premises at any time after he conveyed to plaintiff in 1910. The one-fifth interest not covered by his deed to plaintiff was owned by George B. Harris, as trustee, who acquired title in 1902 from one Ladd, recorded his deed in 1903, and had the title of record at all times thereafter.

In preparing the plat of the land proposed to be taken, and for the purpose of ascertaining the names of the owners of lands affected by the proceedings, the city engineer consulted what is known as a "division record," kept in the office of the county auditor, and from which the auditor obtained the names of the owners of lands to be extended upon annual tax lists. It was kept by a deputy in his office, who went each morning to the office of the register of deeds to secure a list of all deeds filed for record during the previous day, and then entered the name of each grantee and a description of the land conveyed upon such division record. The deed from Feye to plaintiff had not been entered on this record, and a person examining it would find Feye named as the owner when the engineer prepared his plat and during the course of the subsequent proceedings to acquire the land.

At the time when the plat was made and filed, there were three private corporations in Minneapolis, each having a tract index of all lands in Hennepin county. These corporations were in the business of furnishing abstracts of title, and, for a small fee, would have furnished the name of the owner of any tract of land in the city of Minneapolis to any inquirer. Their records showed the true state of the title to the tract in question when the proceedings to acquire it were begun.

The strip of land appropriated is worth $32,500. The commissioners appointed to award damages allowed nothing for its taking. A proceeding to acquire the same land for the same purpose was begun prior to the proceeding which finally resulted in its appropriation, but was abandoned. When the first was pending, plaintiff's duly authorized agent appeared before the commissioners and was heard on the question of the amount of plaintiff's damages. The same commissioners acted in both proceedings. In September, 1915, the defendant had notice that plaintiff claimed that the last proceeding was void insofar as it affected the parcel of land in question.

These facts are gathered from the findings and are established by evi-

dence which is practically undisputed. Two findings of fact are challenged as wholly without support in the evidence. The first is, that the division record in the county auditor's office was the only record in any public office in Hennepin county, or in the city of Minneapolis, where the names of landowners could be conveniently and readily secured; and the other, that the city engineer and the city clerk could not have readily ascertained that plaintiff was the owner of an undivided four-fifths of the tract in question. The questions presented by this appeal are stated by counsel to be, whether, on the evidence and facts as found, defendant could not have readily ascertained that plaintiff owned an undivided four-fifths of the strip of land in question; whether the failure to designate it as owner on the plat and survey and in the published notice, makes the proceeding void, and whether its rights have not been unlawfully invaded in violation of the due process of law clause of the Federal Constitution.

1. The law of the case is settled by the decision of the former appeal. Only such questions as were not considered and disposed of on that appeal are now open for consideration. The first is, whether the two findings under attack can be sustained.

This is not a case where the witnesses on either side have given conflicting testimony. The sources of information which might have been consulted, and those which were in fact consulted, were proved by undisputed testimony. It then became necessary to determine whether the city engineer and city clerk could have "readily ascertained" that plaintiff owned four-fifths of the tract involved. The trial court was required to draw deductions from the testimony before it. If it was of such a nature that, in considering it, reasonable minds might properly reach different conclusions, a question of fact arose for decision. The facts brought out in the testimony were probative or evidential. The ultimate fact had to be deduced therefrom. In drawing its conclusion from the evidential facts, the trial court was drawing a conclusion of fact and not of law. Clark v. Chicago, M. & St. P. Ry. Co. 28 Minn. 69, 9 N. W. 75; Northwestern F. & M. Ins. Co. v. Connecticut F. Ins. Co. 105 Minn. 483, 117 N. W. 825; 12 C. J. 388. Plaintiff, therefore, has imposed upon it the difficult task of overturning the trial court's findings on questions of fact.

We are not disposed to treat lightly a failure to give a landowner the notice which the law provides he shall have when his land is to be taken by right of eminent domain. This was indicated by the opinion on the former appeal, in which it was said that "a failure to give the notice required renders the proceedings absolutely void." The engineer's plat when filed, and the notice published by the city clerk, are the only channels through which a landowner gets information that his land is to be appropriated in proceedings to widen streets in Minneapolis. His name, as well as a description of his land, should appear upon the plat and in the notice, but, as we pointed out in the former opinion, the statute does not unqualifiedly require his name to be given. It may be omitted if it cannot be readily ascertained. If it may be omitted without destroying the validity of the proceedings as to him, it follows that they are not void if, instead of the true owner's name, that of his ancestor or grantor is erroneously given because the right name could not be readily ascertained. The statute does not require the city officials to consult the best or most reliable sources of information in their quest for a landowner's name. Doubtless the records in the office of the register of deeds, or those of a modern abstract company, are the only ones from which the name of the true owner may be ascertained to a certainty, and without chance of a mistake. The auditor's division record is not to be compared with them for accuracy or comprehensiveness, but it is a source of information of some sort. No one would buy land on the strength of what it shows as to the title, but for quick and ready reference it has some value. The language of the statute is elastic. Possibly it is too indefinite to protect a landowner properly. That, however, is a matter for the legislature. We must take it as we find it and leave to the district court of the counties to which the statute applies, the duty of determining in each case whether city officials have complied with its requirements in their search for the names of landowners.

From the record we discover a circumstance which may have been considered by the trial court. In its reply, plaintiff admitted that H. K. Feye was its co-owner, but, at the trial, having discovered its mistake, it asked and obtained leave to amend by striking out the admission, substituting a denial of Feye's ownership, and alleging ownership by Harris of one-fifth of the tract. This is of no importance in itself, and we

only allude to it because it lends color to the finding that the owner's name could not be readily ascertained since plaintiff itself did not ascertain the name of its cotenant until after it had pleaded it erroneously, though it must have had at hand all, if not more, sources of information than were available to defendant. We conclude that the findings are not manifestly contrary to the evidence and that they must be sustained.

2. The point is made that the commissioners learned, in the course of the first proceeding, that the land was owned by plaintiff and not Feye, and that nevertheless throughout the second proceeding Feye continued to be named as owner. It is, therefore, contended that defendant, with actual notice of the facts, continued the erroneous designation of the owner with which it originally set out. We are not persuaded that notice to the commissioners was notice to the defendant. They were neither officers nor agents of the city. They did not represent it in the performance of their duties, which were quasi-judicial and called for the exercise of disinterested judgment in awarding damages.

3. It is urged that defendant had notice of plaintiff's ownership because its railroad tracks occupied a portion of the tract. There is no finding that it was in actual possession. The finding was: "That at the time of the institution of said condemnation proceeding * * * and at all times during the continuance thereof plaintiff used and occupied for railway purposes four tracks * * * said tracks being adjacent to said strip of land first herein described." The only testimony on this subject we have found, was given by plaintiff's division superintendent, and is as follows: "Q. But in the fall of 1913, at the time of the commencement of this proceeding, there was a vacant and unoccupied strip of ground between the strip here taken and the tracks indicated in red of approximately 120 feet in width, was there not? A. Yes, sir. Q. So that the portion of ground from which these 20 feet were taken was, at the time of the taking, entirely vacant and unoccupied? A. It was. Q. That was true for a distance of approximately 100 feet from Seventh street, was it not? A. Yes."

Upon the record before us we would not be justified in holding that plaintiff was in the actual possession of the 20 foot strip when the proceedings to acquire it were begun or at any time during their pendency.

Hence we do not consider what effect possession would have had, if it had been shown.

4. The contention that plaintiff has been deprived of its property without due process of law cannot be sustained. This point was exhaustively discussed in the briefs on the former appeal, and was carefully considered by the court, and fully covered by what was said in the former opinion.

It is true that plaintiff's land has been expropriated without compensation, but that fact appeared on the former appeal, and was held insufficient to show that plaintiff was deprived of its property without due process of law. Two new facts now appear. Feye had no interest in the land and $32,500 represents the value of the strip taken. Neither of these new facts alters the situation from a legal standpoint in view of our former decision. The value of the tract merely serves to emphasize plaintiff's apparent loss. The principle is the same whether the land is worth much or little, if it has been expropriated in proceedings amounting to due process of law.

The commissioners' report describes the land taken and awards Feye "for his damages and compensation * * * the sum of no/100 dollars ($000), the same being the amount of damages for the taking of said land in excess of the benefits accruing to the remainder of said * * * tract * * * by reason of the making of said improvement." The only conclusion to be drawn from this language is that the commissioners considered the special benefits to the portion of the tract not taken to be equal to or greater than the value of the 20 foot strip taken. If the judgment of the commissioners was erroneous, plaintiff had a right under the statute to review it by an appeal from the award to the district court of Hennepin county. Having such right, it cannot be held that the failure to award any damages amounts to a denial of due process of law. See State v. City of Montevideo, supra, page 157, 171 N. W. 314.

Order affirmed.

DIBELL, J. (dissenting).