## A. W. WILLIAMS AND OTHERS v. NATIONAL CONTRACTING COMPANY.[1]

August 1, 1924.

No. 24,092.

**School district liable for reasonable value of benefit from illegal contract.**
When a school district makes a contract on a cost-plus basis for the construction of additions to a building and it is illegal, and taxpayers procure a restraining order stopping the work, and, in the same action and almost immediately following the restraining order, a stipulation and order are made for "protective work" which uses and necessarily adopts a large portion of the improvement, the balance of which being an excavation is not actually used by the district until about six months later and in the meantime a cave-in occurs, it is *held*:

(1) That the evidence is sufficient to justify the finding of the trial court as to the value of the benefits of the improvement to the district.

(2) That such value was properly determined as of the date of the restraining order when the work was stopped.

That, by the taking over of a substantial part of the improvement and using it in the permanent project, the whole of the improvement was taken over.

(3) That the rule of law applicable to a case where a school district contracts for an improvement, which it has power to make, but the contract is void because not made after competitive bidding as required by law, is that the district is obliged to pay for the reasonable value of any benefits it receives through part performance of the contract.

(4) The cost of removing the dirt from the cave-in is not chargeable to the contractor but is exclusively the misfortune of the school district.

(5) Stipulation of parties is construed as to the total amount payable thereunder.

Action in the district court for St. Louis county to restrain defendant school district from entering into contracts upon the cost-

[1]Reported in 199 N. W. 919.

plus basis. The case was tried before Hughes, J., who made findings, quoted partially on pages 298, 299, and ordered judgment granting a permanent injunction. From an order denying its motion for a new trial, defendant appealed. Modified.

*Gunderson & Leach,* for appellant.

*L. R. Simons* and *Boyle & Montague,* for respondents.

WILSON, C. J.

In the month of July, 1919, defendant school district, having been authorized by the voters in the district to borrow money to begin the erection of certain additions to the high school building at Buhl, pursuant to a resolution passed by its board, entered into a verbal contract with the National Contracting Company, the appellant herein, to do the work on what is termed a cost-plus basis. The board of education had employed an architect who had made plans and specifications for the project. By the terms of the agreement the appellant was to order the material and labor and submit estimates therefor, and it was to receive cost plus ten per cent.

The board of education did not advertise for bids as required by section 2773, G. S. 1913, nor did it demand and require the public contractor's bond as provided by law. Section 8245, G. S. 1913.

The appellant commenced work, and on November 5, 1919, after a substantial amount had been done, the plaintiffs, as taxpayers in the district, commenced this action against the board of education, the members thereof, and appellant, as well as one Anderson, who had a similar contract on another building with which we are not here concerned. The action sought to restrain and enjoin the school district from awarding or entering into any further contracts on the cost-plus basis, and enjoining and restraining the payment of any money in carrying out the said contract with appellant. A temporary restraining order was issued on that date. The appellant answered. It later filed a supplemental and a cross answer to the pleading of the other defendants.

On November 19, 1919, the parties entered into a stipulation as follows, to-wit:

"It appearing to the parties hereto that the best interests of the parties and the public required the completion of the basement of the North Wing of the addition to the school building at Buhl up to the grade level, including floor slabs, as soon as possible, and the National Contracting Company having agreed to complete said work to that point upon the terms of the agreement now in force, including the necessary provisions for the protection of said work during the winter, within three weeks from date hereof at a cost of not to exceed $6,000.00, they to be paid 10% of the actual cost of doing said additional work as their profit for so doing, provided that the Defendant District shall advance the invoice price of the material billed to or received by National Contracting Company since the date of the restraining order herein, so as to avoid the necessity of the said National Contracting Company advancing said sums.

"Now therefore it is stipulated that in view of the emergency which is now existing requiring the prompt performance of said work in order to protect it against approaching cold weather, said National Contracting Company may, and it is hereby authorized and agrees to proceed at once with the completion of said work on said North Wing up to the point stated under the terms hereof, whereby it shall receive 10% of the actual cost of doing such additional work as the profit for so doing which work shall be completed within three weeks from the date hereof, and said National Contracting Company shall be entitled to receive and shall be paid therefor the actual cost of such performance, including labor and material, and 10% in addition thereto, and said District shall also pay for such material billed to or received by said National Contracting Company since the date of and not including in its last estimate, which said invoice however, shall not exceed the sum of $4,000.00 and the difference, if any, between $6,000.00 and the amount to be paid said National Contracting Company for said additional work under the terms hereof.

"It is understood that an order may be entered by the Court herein in accordance with this stipulation, and that this stipulation and said order are to be deemed as made and entered without pre-

judice to the rights and contentions of the respective parties with respect to the obligations of the Defendant District to pay or the right of the contractors to demand payment under their respective contracts, and that work on the balance of the Kinney and Buhl jobs, exclusive of the necessary protective measures which shall be taken by said district, shall be discontinued until such time as said work can be resumed to advantage in the spring of 1920.

"Said National Contracting Company shall also before any money shall be paid to it hereunder, give a bond to the District in the sum of $10,000.00 conditioned that the said work to be done hereunder shall in all respects be done in a workmanlike manner and to be structurally sound and sufficient for the purpose for which it is intended, the cost of which bond shall, however, be considered as a part of the cost of performance hereunder and shall be in such form and with such surety or sureties as the Court shall approve and accept.

"That save as herein provided for the restraining order now in force shall be and remain in force and [effect] until set aside, vacated or otherwise modified by the Court herein.

"That the certificate of the architect, A. W. Kerr & Company, as to the actual cost of such work and the completion thereof in accordance herewith shall be prima facie evidence of the fact that such work is completed, and the cost thereof, and the authority for the payment therefor by said School District to said National Contracting Company, as shall also be the certificate of such architect as to the material to be paid for by the District hereunder."

Pursuant to this stipulation the court made an order covering substantially the same provisions as are contained in the stipulation. Among other things, this order contained this language:

"It is ordered that said National Contracting Company shall forthwith proceed with said work under the arrangements and upon the terms set forth in said stipulation, and shall be entitled to receive from said defendant, School District No. 35, and said School District shall pay to it upon completion thereof, and the observance by it of the other terms of said stipulation, the actual cost of said

work, labor and material, not exceeding, however, the sum of $6,000.00 including the 10% contractor's profit thereon, and said defendant District shall, and it is hereby authorized and directed to pay for the material billed to or received by said National Contracting Company for said Buhl job since the date of the restraining order herein, to the amount and for the purpose provided for in the stipulation."

The work contemplated by this stipulation was "protective work." It was necessary to complete the work up to a point where necessary precautionary measures could be taken to protect the job against the effect of cold weather. The supplemental answer alleges that, by the terms of said stipulation and order, appellant should receive the actual cost of doing said work and of the material necessarily used therein not exceeding $6,000, which said sum was to include both the cost of labor and material and the ten per cent allowed to appellant, and that it also provided that the district should pay for material billed or received after November 5, 1919, up to $4,000 and such sum in addition thereto as may equal the difference between $6,000 and the amount paid appellant under said stipulation, and that to the extent of such additional expenditure of $10,000 the work was permitted to advance. The other defendants in their reply to the cross answer admitted this claim, but it was denied by plaintiffs.

All parties conceded when the case was called for trial that the oral contract was invalid and that plaintiff was entitled to the injunction prayed for. Counsel for all parties consented that the case go to trial upon terms stated by the court as follows:

"The Court: This action was originally brought by the plaintiffs, as taxpayers, to restrain any further performance of the contract referred to in the complaint, or the payment of money thereunder, on the ground that the contract was not a legal obligation of the defendant Independent School District Number 35. The answers of the various defendants admit that the contract in question was not entered into in accordance with statute requirements, and that the contract is void. Early in the proceedings in this

case a suggestion was made that although the contract itself was void, that the court take jurisdiction of the matter for the purpose of determining the value of the improvements or the installation by the defendants to the school district. By appropriate pleadings, the defendants among themselves have disposed of the issue as to the value of the installation by claims therefor and admissions in the opposing pleadings. The plaintiffs, as taxpayers if this matter is to be heard by the court, should be permitted to defend against all of those claims, to object to any evidence that may be offered by the defendants as to values, and to offer any evidence that they shall desire as to evidence of values, and to make any defense to the claims of the defendants or claimants that the school district itself might have made if there was an actual controversy between the claimants and the school district as to values. The plaintiffs, the taxpayers, in proceeding to trial under the foregoing arrangement, do not admit that the improvements for which recovery is sought were of any value to the said school district or that there is any legal liability on the part of said school district to pay anything therefor."

Among the findings of fact made by the court are these:

"10. That at the opening of the trial it was admitted by the defendant National Contracting Company that the said cost-plus contract was void and unenforceable, and the question litigated was as to the value to the defendant school district of the improvement which was made by said defendant contracting company under said cost-plus contract.

"11. That the value of the improvement to the school district, including the office building and warehouse, constructed by said contracting company under said cost-plus contract did not exceed the sum of $40,500.00.

"12. That subsequently to the commencement of this action a stipulation was entered into wherein and whereby said contracting company was authorized to do certain work to protect the installation already made at a cost of not to exceed $6,000.00, and that

upon the trial hereof it was admitted by the plaintiffs that the work so done was of the value of $6,000.00.

"13. That the total value to the school district of the work done by the said defendant contracting company, including the protective work done, did not exceed the sum of $46,500.00.

"14. That while progress of the said work was stopped and before the letting of the contract upon competitive bids, cave-ins occurred, the reasonable value of removing which was and is the sum of $5,000.00, and that thereby the value of the improvement as installed by the defendant contracting company was reduced to not exceeding the sum of $41,500.00.

"15. That the defendant contracting company has been paid or has had warrants of the said district issued to it to apply thereon in the aggregate sum of $44,838.73, and that it has been overpaid in the sum of $3,338.73."

Appellant's motion for amended findings was denied. It now appeals from an order denying its motion for a new trial. By appropriate assignments of error appellant now brings to this court the following inquiries: (1) Is the finding of the court as to the value, to the district, of the labor and material furnished up to November 5, 1919, and remaining unpaid sustained by the evidence? (2) At what date is this value to be determined? (3) Damage or loss occasioned by the cave-in of 2,000 cubic yards of dirt, and (4) The proper construction of the stipulation and order.

At the outset it may be stated that the question as to the right or authority of the parties to this action, even with the approval of the trial court, to make the contract included in the stipulation, is not before this court and is not passed upon by us. The parties saw fit to try the matter upon the theory that they have and we will merely pass upon the questions presented.

1. Appellant urges that the court is not justified by the evidence in finding the value of the improvement (up to November 5, 1919), to the district to be $40,500 as stated in paragraph 11 of the findings. Counsel for appellant make the claim that the evidence justifies a finding that this item should have been $81,019.98, and after allowing certain credits there is a balance of $68,654.02 upon which

the aggregate of the payments amounts to $44,838.73, leaving a balance unpaid of $23,815.29. These figures ignore the stipulation which we will consider later. About 50 pages of appellant's brief are devoted to the argument that the conclusion of the trial court is erroneous, and testimony and figures of various witnesses are detailed at length. Opposed to this, respondent's brief abstracts the figures given by the various witnesses, and says that the lowest amounts given by the witnesses will justify a finding in the sum of $30,647. As we view this record, the trial court has ample evidence to support its finding in the sum of $40,500. This is purely a question of fact. We see no reason that justifies our interference. The presentation of this matter as made by appellant's counsel would be very persuasive to a trier of fact, but its logic does not reach the question before this court. Our inquiry must be as to whether or not this finding is manifestly and palpably contrary to the evidence. Great North. Ry. Co. v. City of Minneapolis, 142 Minn. 308, 172 N. W. 135. We answer it in the negative.

2. It becomes important to determine the time when the value of the benefit to the district is to be fixed. Appellant claims this value should be determined as of the date of the restraining order November 5, 1919. Respondent claims the time for such determination was in June, 1920, when the district made a valid contract to advance the project and when it then first used the entire improvement provided by appellant. Appellant argues that if the time is June, 1920, then the value is enhanced because the cost was then much greater. But upon which theory was the case tried? We find from the record that this theory is reflected and made clear by the trial court at folio 414 where he said:

"The Court: I do not think we ought to go into this too extensively, Mr. Whipple. You can show what was done * * *, but the ultimate question is: What was the thing worth as it was left there by him (Mr. Shulind)? That will be the question."

Again the court at folio 1749 in the record states:

"The Court: I think the question is: What was the improvement worth at the time the injunction (restraining order) was served?"

It thus appears that the case was tried upon the theory that the time to be adopted was the time of the serving of the restraining order on November 5, 1919. Respondent's brief says the case was not tried upon this theory. However, the evidence as to cost related to that time, and the opinion witnesses made their examination about that time. We think the trial court was right. On this date the appellant was put off the work and ordered by the court to stop. Almost immediately thereafter the district, acting under the stipulation, proceeded to make use of a part of the work by having it completed up to a specified point of progress. True, the stipulation was made "without prejudice to the rights and contentions of the respective parties with respect to the obligations of Defendant District to pay or the right of the contractors to demand payment under their respective contracts." But we are now considering the legal rights of the parties which do not exist by virtue of the contract, but rather because of there being no contract. A substantial portion of this work was actually adopted and with the addition thereto made into a complete part of the building. Much of this work was beneficial to the district. The so-called "hole in the ground" which respondents claim gave no benefit until used in June, 1920, represented, perhaps, from one-tenth to one-fourth of the cost of the whole. The district had charge of the improvement. It was in its possession and after the date of the restraining order it was under its exclusive control. It is suggested that the acceptance cannot be in part and is not effective until the whole is accepted or taken over. We cannot adopt such rule, but are satisfied that the taking over of such substantial part of the work together with the fact that the plans and specifications call for the use of the so-called "hole in the ground" is sufficient to justify the conclusion that the whole was taken over and that the trial court adopted the correct time at which the value of the benefit to the district was to be determined.

3. The rule of law applicable to a case where a school district contracts for an improvement, which it has power to make, but the contract is void because not made after competitive bidding as required by law, is that the district is obliged to pay for the reason-

able value of any benefit it receives through part performance of the contract. Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 181 N. W. 584. The reasons for this rule are well and explicitly stated in the case cited. Were we to adopt the theory advocated by counsel for respondents that there were no benefits until the improvement was all an actual part of the proposed structure, it would permit the district to change its mind and plans and thereby prevent any recovery. Such a doctrine would have a tendency to destroy the very reason which supports a recovery at all in such cases. In many cases necessity is half a reason and, in fact, the doctrine and reason of quasi-contracts is based largely upon necessity. The law says, in such cases as this, that the district, in equity and good conscience ought to pay. Such being the reason for the imposition of legal liability, the court should not apply technical and narrow rules which might in many cases prevent a recovery. At what time in the course of the events in the particular case of this character the value of the benefits is to be determined must depend largely upon the facts in each case. The facts in the case at bar establish this time with unerring accuracy.

4. Our conclusion in respect to the time when the value of the benefit is to be determined leads to the conclusion that the cave-in which happened in the spring of 1920, without any fault or negligence of appellant, is exclusively the misfortune of the school district and the cost of the removal thereof or the depreciation in the value of the benefits of the improvement to the district is not chargeable to appellant. The pleadings do not refer to the cave-in. It did not exist when the pleadings were made, and when the existence of the cave-in developed in the testimony it was considered by the court as bearing upon the reasonable value of the benefits from the improvement to the district and the court reduced this value in the sum of $5,000 which it considered was the reasonable value for removing it, as stated in finding 14 as above set forth. This cave-in having occurred several months after the district had taken over the improvement, we are of the opinion that the court was in error to the extent of $5,000 to the prejudice of appellant. The district and not the appellant must bear this burden.

5. The court construed the stipulation and order above set forth as limiting the amount of payment thereunder to $6,000, whereas appellant claims that the limitation thereof is $10,000. The amount of "protective work" required was not an unknown quantity when this stipulation was made. The parties knew what work was required. This work actually cost over $13,000. There was nothing unusual or abnormal that increased the cost. At the time of making the stipulation we must assume that the cost to do this work and furnish the necessary material was obviously over $6,000. Appellant was on the ground with men, machinery and equipment. A large amount of material was on the ground and the bills therefor were unpaid. This accounted for some of the peculiar language in the contract. The "protective work" was completed by appellant.

The architect and school district construed the stipulation and order to mean that the appellant was entitled to receive $10,000 and no more, and so this was the amount paid to appellant. This was the understanding of the parties to the contract.

The taxpayers, the plaintiffs, are now parties interested and the court must look to the language of this stipulation for its meaning. It is not clear. The circumstances mentioned are an element to be considered. Some material on the ground had been billed to the district but not paid; there was some material on the ground which had not been billed to the district; some material had been ordered by appellant which was not on the ground but which was arriving daily, though it had not been billed to appellant nor received by it. The value of these materials exceeded $5,000. This was the situation when the stipulation was made. The stipulation says appellant shall complete the said work at a cost of not to exceed $6,000, "provided that the Defendant District shall advance the invoice price of the material billed to or received by the National Contracting Company since the date of the restraining order herein, so as to avoid the necessity of the said National Contracting Company advancing said sums." The word "advance", as here used, has what significance or meaning? Respondents say it does not mean to pay, but merely to make an advance of a part of the $6,000. The more ordinary and usual meaning would be to pay

the invoice price. This meaning is emphasized and made more emphatic by a later clause which reads like this:

"And said District shall also pay for such material billed to or received by said National Contracting Company since the date of and not included in its last estimate, which said invoice, however, shall not exceed the sum of $4,000.00 and the difference, if any, between $6,000.00 and the amount to be paid said National Contracting Company for said additional work under the terms hereof."

The stipulation says that appellant shall do this work at a cost not to exceed $6,000 and it also says that appellant shall be paid the actual cost of such performance including labor and material, and 10 per cent in addition thereto, and then follows the language, last quoted, which limits the invoices to be paid to $4,000. There was no necessity to limit this if the whole could not exceed $6,000. But the limitation is this: "$4,000.00 and the difference, if any, between $6,000.00 and the amount to be paid said National Contracting Company for said additional work under the terms hereof." The amount to represent the "difference" referred to is almost incomprehensible. It seems plain, however, that the bills were limited to $4,000 and the balance of the improvement was limited to $6,000 or a total of $10,000. If, as respondent claims, appellant agreed to furnish all labor and material and do the work, including its 10 per cent, for $6,000, the language which says the district shall also pay at least $4,000 and an additional sum, if any, is meaningless. It is not necessary to exclude any part of the language in our view of construction.

The stipulation requires a $10,000 bond. Common experience teaches us that a building contractor's bond is usually the amount of the contract. If this contract was not to exceed $6,000, why a $10,000 bond? This circumstance tends to the view that it was the intention of the parties to create a total liability of $10,000 as they later carried it out and paid the $10,000.

There was no necessity for a bond in excess of the contract price. Much of the material was on the ground and the district was authorized to pay this up to $4,000. It was evidently in the minds of

the parties that the appellant might use all the material which the district agreed to furnish under the terms of the second paragraph of the stipulation and then that the material to be furnished by the appellant might not cost as much as $6,000 or it might cost more than that and they apparently went upon the theory that if the work and material furnished by appellant was less than $6,000, then the school district should not only pay for $4,000 worth of material, but it should also pay for an additional amount of material which would equal the difference between $6,000 and the actual cost of the work and material furnished by appellant. This was conditional of course on the amount of material on the ground which had been billed to or received by the appellant. If there was not that much material, then the appellant would have to furnish it. The school district was only obligated to pay for such material as had been billed to or received by the appellant during the particular time specified in the stipulation, and if this did not amount to $4,000 the appellant would have to furnish the balance. The school district agreed to pay for the material billed to appellant or received by it after November 5, 1919, and appellant agreed to complete the work furnishing the necessary labor and material at a cost not to exceed $6,000. Hence all parties agreed that the school district should pay for this material and the appellant would furnish the balance of material and labor at a cost not to exceed $6,000.

At that time the appellant could have figured that it might not cost $6,000 after using all the material which the district was to pay for and in that case the school district would not only pay for $4,000 worth of material, but they would also pay an additional sum for materials billed to or received by appellant equal to the difference between $6,000 and the actual cost of the labor and material furnished by appellant. Such additional amount with that portion of the $6,000 required would necessarily aggregate $6,000 and the distinct item of $4,000 makes a total aggregate of $10,000 as the ultimate result as to the amount called for by this stipulation. If it had been the intention of the parties that the company should perform this work and furnish all materials therefor, there would have been no necessity for the last lines of paragraph 1 of the

stipulation, and there would have been no necessity for any part of paragraph 2 of the stipulation. There would have been no necessity for the last two lines of the last paragraph of the stipulation, providing for the certificate of the architect as to the materials to be paid for by the school district. All of this language must mean something. If the company should do all of the work and furnish all of the materials for this project for $6,000, then all of this language is meaningless.

No one can construe this contract with any degree of satisfaction, but we are brought to the conclusion that appellant's performance of this contract entitled it to receive the full sum of $10,000 and that the construction of the trial court to the effect that the stipulation limited the cost of the improvement therein mentioned to $6,000 was erroneous.

The meaning of the parties must be collected from what is expressed in the stipulation. So far as is reasonably possible, a construction is to be avoided which would lead to absurd or unjust results. Dunnell, Minn. Dig. § 1824. Viewing the situation of the parties as above disclosed, we feel the legal principle which supports a construction favorable to justice, and which will not lead to great wrong, supports our conclusion.

The court was in error in finding that the appellant had been overpaid under the stipulation. It was entitled to receive the full sum of $10,000.

Because of the errors indicated, the findings and conclusions of law will be amended and modified to comply with the views herein expressed so that judgment may be entered in favor of plaintiff for the proper amount.


DIBELL, J. (dissenting.)
I dissent.