FREDERICK E. KREATZ v. ST. CLOUD SCHOOL DISTRICT.[1]

March 29, 1901.

Nos. 12,404—(217).

**Verdict Sustained by Evidence.**
Retrial of case reported in 79 Minn. 14. *Held*, the evidence is sufficient to support the verdict.

Action in the district court for Stearns county to recover $311.54 for material and labor furnished. The case was tried before Searle, J., and a jury, which rendered a verdict in favor of plaintiff. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*George W. Stewart*, for appellant.

*Taylor & Jenks*, for respondent.

LEWIS, J.

Second appeal in this action, and the decision in the former appeal will be found reported in 79 Minn. 14, 81 N. W. 533. Upon the trial below, plaintiff had a verdict, and defendant appeals from an order denying its motion for a new trial.

The legal questions determined upon the former appeal control the disposition of the questions raised at this time, and it is only necessary to determine whether they were correctly applied by the trial court, and whether the evidence is sufficient to sustain the verdict. The question at issue was simply this: The plaintiff claimed to have finished his heating-plant contract, and noti-

fied the chairman of the building committee that he would no longer keep the heat up for defendant's benefit, and that, if defendant wanted the heat kept up, to send some one to take charge, or he would turn the water off. Plaintiff further claims that the building committee did thereupon take charge of the plant and operate it, and while doing so the accident occurred; that thereupon defendant ordered the repairs done, for which plaintiff brought this action. There was no dispute as to the fact that the accident occurred, and that defendant ordered the repairing done; and it was admitted that, in so ordering the repairs, defendant did not waive its right to hold plaintiff responsible for the injury, and that in making the repairs plaintiff did not waive his right to hold defendant for the reasonable value of the services. It seems to have been admitted that plaintiff had completed his contract when he notified the building committee to take charge of the plant, and there was evidence that the janitor, an employee of defendant, was in actual charge of the plant when the accident happened.

Such being the situation, there were left for settlement at the trial only these questions, viz.: Was the janitor operating the plant at the time of the accident on behalf of the defendant? Or, to put it more fully, as did the trial judge in submitting the case to the jury, had plaintiff surrendered possession of the plant to defendant, had the committee assumed control of it, and did the accident occur while in defendant's control, and by reason of its negligence? The whole case seems to turn upon this point: Was the evidence sufficient to show that the building committee had authorized its agents to assume control of the heating plant?

There was evidence on part of plaintiff tending to prove that fact, substantially as follows: When notified by plaintiff to take charge of the plant or it would be shut down, the chairman of the building committee referred the plaintiff to Mr. Parr, the superintendent of schools. Plaintiff saw Mr. Parr, who told him that he would put their licensed engineer in charge. On the following day, Tenney, who was superintendent of construction for defendant, told plaintiff not to shut down the plant; that Mr. Parr had directed him to place Lacher in charge. Lacher was at that time

a janitor in the employ of defendant, and was told by Heimann to take charge, and did so. Heimann had been instructed by Tenney to so instruct the janitor. Heimann was not an employee of defendant, but Parr and Tenney were. Parr, as superintendent of schools, had a general supervision of janitors, by virtue of his office.

We think it was proper to prove the acts and declarations of Parr with reference to the control of the janitor and his connection with the new plant. If the chairman of the building committee had not referred plaintiff to Parr for authority, it might be different. Possibly his act in assuming to put a man in charge of the plant without special authority would not bind defendant. But, the matter having been referred to him, his action was binding on defendant. It was of no consequence that he did not directly place the janitor in charge. If he directed Tenney to do so, and the plaintiff, relying upon the result of such action, surrendered possession to the janitor, then the defendant assumed control, and was responsible for the injury which followed. As decided in the former appeal, formal action by the school board or by the building committee was not essential. The active representative of the committee had, by virtue of his position as such, power to discharge the plaintiff from the responsibility of keeping control of the plant. The evidence is sufficient to support the verdict, and we find no error in the record.

Order affirmed.

COLLINS, J. (dissenting).

I am compelled to dissent. Kreatz, the plaintiff, was the contractor for a heating plant to be put into a new school building being erected by defendant. His contract had been executed by a building committee expressly directed to so execute by defendant's board of education. It contained stringent clauses as to losses from accident prior to completion, and also as to an inspection and acceptance in writing by the board itself before the defendant should be held liable for payment. Heimann was the contractor for the superstructure, but he and Kreatz were entirely independent. Tenney was employed by the board to super-

intend Heimann's work, but had nothing to do with Kreatz. The building committee consisted of three members of the board, Stewart being first named in order of appointment. Parr, who testified at the first trial, but died before the second, was superintendent of the schools, having charge of the janitors. He had nothing to do with the new building or its construction. Lacher was janitor of an old building, but had not been employed by the board to act at the new building until school opened therein, several weeks after the freeze-up.

November 28 Kreatz had not fully completed his work, but had so far finished the plant that it had been in operation—his men in charge—for a day or two. He had not notified the committee or the board that the plant was practically completed or in operation. He was in possession of it, while Heimann, the general contractor, had the keys to the building, was still at work upon his own contract, and did not get through for weeks afterwards. This was the condition when Stewart told Kreatz to "see" Superintendent of Schools Parr. These two men met in the street, and, according to Kreatz, the superintendent said, "We have got a licensed engineer at the Franklin School, and I am going right straight up there, and I will put him in charge of the building." Kreatz afterwards went to the building, and took his men away, leaving the plant to take care of itself. On this point Kreatz testified that he did not see any one in charge of the plant, but "took it for granted that there would be." Lacher testified that he was told to fire up by Heimann, and by no other person, while the latter stated that he was directed to put Lacher in charge by Tenney, and, further, that Parr visited the building, and, when told that Kreatz intended to draw off the water, said, "You want that building dry, and we want that heat on," to which Heimann replied, "That suits me all right." It is hardly necessary to say that both Parr, whose testimony, taken at the first trial, was introduced and read, and Tenney, denied that they had ever given instructions to Heimann or to Lacher.

From the testimony it conclusively appears that when operating the plant for testing purposes, before the Kreatz contract had been fully completed, and long before the building was fin-

ished by Heimann, Stewart, one member of the building committee of three, was notified by Kreatz that he proposed to take away his men, and that Stewart told him to see Parr. Kreatz did not have any conversation with either of Stewart's associates on the committee or on the board. He was bound to take notice that one member of that committee could not bind it or the board by anything that he said, and that in no way could Stewart of his own motion saddle that heating plant upon the defendant. He was bound to know that the superintendent of schools could not lawfully act or bind the defendant district as its agent, or as the agent of its agents, the board, or the committee. But here was not the end of the agency or delegation of authority upon which the verdict in the case depends. Parr told Heimann or Tenney, or both, to put Lacher in charge of it, and thus introduced other representatives or agents. And finally Lacher, who had no more to do with the building than had the writer, kept up the fire to accommodate Heimann, who was still at work, and did not finish the building for weeks after the accident.

Granting what seems to be assumed by the majority opinion,— that the building committee, itself a mere agent of the board, could disregard the contract in respect to testing the plant after its completion, and the requirement that there must then be an acceptance by the board before the defendant could be bound, and granting that the question is, as stated by the majority, "Was the evidence sufficient to show that the building committee had authorized its agents to assume control of the heating plant?"— I feel compelled, with due deference to the majority, to say that there is a total absence of testimony tending to show that the committee directed anybody to assume control or to assert any authority over or care for the plant. Two of the three members of that committee were not consulted at all, and knew nothing of the condition of affairs. Stewart was not the committee. One of the witnesses called him the "chairman," but the only proof of this is that he was the first named of the three. Even if he was the chairman, he had no other or greater power or authority than had each of his associates. The reference in the main opinion as to the power of the "active representative" of the committee

assumes that Stewart was the active man of the three. The testimony fails to show that the committee had an "active" representative, or that one member was more active than the others. In fact, it does not show that any member ever performed an act or uttered a word, except as reports were made and advice requested at the meetings of the school board in respect to the construction of the building. Even if there had been this active one of the committee, Kreatz could not have turned over his uncompleted plant to defendant upon his authority alone. It also affirmatively appears that Kreatz did not rely at any time upon what was said or done by Parr. Without inquiring as to what the latter had done, or what had been done by the representatives, near and remote, of that member of the committee who had merely told him to see the superintendent, he withdrew his men and left the plant to take care of itself.

The logic of this case is that the janitor can compel defendant to compensate him for services rendered in caring for the plant after Kreatz left it, unless it can be shown as a defense that the accident was the result of his (the janitor's) negligence or carelessness. Are the majority prepared to assent to that? I think not. But the question here is not the one assumed in the majority opinion. It is this, and this only: Could Stewart, one member of the committee of three selected by the board itself, act upon his own motion, and, without conference with the other members, refer Kreatz to the superintendent of schools for authority to take possession of the plant and keep it in operation, and thus avoid the conditions found in the contract, inserted there for the purpose of guarding and protecting the interests of defendant district? The majority answer that he could.

The rule of law thus promulgated is without any authority to support it. It is in direct opposition to rules which have become elementary as to the exercise of official duties, the delegation of authority, and the manner in which public officers must discharge a duty involving joint authority:

First. If discretion and judgment are to be exercised, either as to the time, manner, or feasibility of the exercise of an official function, the body or officer intrusted with the duty to

decide must exercise it, and cannot delegate it to any other officer, body, or person.

Second. Where a board of officers is constituted by law to perform a trust for the public, or to exercise a power or perform a duty prescribed by law, the majority must act; their act being that of the board.

Third. The members composing a board have no power to make any agreement among themselves or with others by which their public action is to be or may be restrained or embarrassed, or its freedom in any wise affected or impaired.

Fourth. One member of an official body, composed of more than two, cannot lawfully act for it, or bind it in any manner, except when, to prevent a failure of justice, it is indispensable that he should act alone.

Fifth. Assuming that the defendant board could appoint a building committee, with full power to act upon the Kreatz contract,—as to this, see Minneapolis Gaslight Co. v. City of Minneapolis, 36 Minn. 159, 30 N. W. 450,—it is self-evident, even if a majority had taken part in the various steps which resulted in placing Lacher in charge, that the power of this committee could not be "vicariously exercised." Its members could not delegate to third persons the judgment and discretion delegated to them by the board.

By this decision the board of education, consisting of several members elected by the people for the purpose, among others, of entering into such contracts for heating plants as a majority might deem advisable, and its committee of three, have been swept aside, and their power and authority have been vested in a single member of that committee; the result being that a pecuniary liability has been imposed upon defendant district, which its officers attempted to avoid by the express provisions of the contract to the effect that this plaintiff, as a contractor, should bear all losses until the building was completed, the plant tested, and the work approved in writing by the architect and the defendant's board. It was entirely competent for these parties to enter into a contract containing these conditions, if they so elected, and no public corporation should be rendered powerless to enforce such

conditions, by the unauthorized act of one man, as has been done here. See Andrews v. School Dist., 37 Minn. 96.