## MATH N. KOTSCHEVAR, *d. b. a.* KOTSCHEVAR CONSTRUCTION COMPANY, v. TOWNSHIP OF NORTH FORK AND OTHERS.[1]

July 15, 1949.

No. 34,856.

[1]Reported in 39 N. W. (2d) 107.

*Harry E. Burns,* for appellant.
*Pierre N. Thomey* and *Ahles & Ahles,* for respondent.

MAGNEY, JUSTICE.

Plaintiff is a road builder. He was employed by defendant township of North Fork, Stearns county, to construct a five-mile stretch of road. An additional two and one-half miles were added later. The road was constructed by plaintiff and accepted by the town board. The board, because of the objections here presented for decision, was unable to pay the bill in full. Plaintiff brought action and recovered a verdict, reduced by the court to $3,886.39. Defendant appeals from an order denying its alternative motion for judgment or a new trial.

In June 1945, the town board sent for plaintiff and entered into an agreement with him to build the contemplated road. No formalities of any kind, as required by statute, were observed. There were no plans or specifications, no bids, no written contract, and no bond. The town board agreed to pay plaintiff so much per hour for the use of his road-building machinery and operators at varying rates for the different machines and so much per hour for other labor. Other details entered into the arrangement. Property owners along the proposed improvement contributed and paid into the town treasury $1,225 to help pay for same.

Plaintiff commenced construction July 13 and completed the job August 30. The road was built according to the county engineer's specifications. On September 6 plaintiff filed an unverified claim for $11,874.76. On that same day, the town board voted that the roads built were satisfactory and by resolution accepted them. On September 10 it voted to pay plaintiff $3,000 on his account. He received $1,500 in cash and was issued a town order for $1,500, which has not been paid. On December 30, 1946, the board rejected a verified bill submitted by plaintiff on December 6, 1946.

The valuation of all property in the township, real and personal, for 1944, was $253,019. At the annual town meeting held on March 14, 1944, the electors voted a tax levy of $1,500 payable in 1945 for road and bridge purposes, and an additional $5,000 for postwar road work. This latter amount was to be used for the improvement of the road in question. The town clerk reported the levy to the county auditor. It appeared to the county auditor that the amount voted at the annual town meeting would call for a tax levy in excess of 15 mills, the maximum allowed by law for road and bridge purposes in the absence of an emergency. M. S. A. 163.05. So the auditor reduced the total amount to be levied to $3,500—$1,500 for the road and bridge fund and $2,000 for incidentals. The latter could be used for road and bridge purposes. The total amount which might have been levied under the 15-mill limitation was $3,795.28.

■ The record discloses no fraud or collusion in the transaction, and there is no claim by defendants that any exists. Plaintiff was employed to build the road on an hourly basis. Construction work could have been stopped at any time. The chairman of the town board supervised the work. It was voted satisfactory by the board and by resolution accepted. The plaintiff in all fairness would be entitled to the full amount asked for in any such transaction between man and man. The fact that he was dealing with a township, a public corporation, creates the legal difficulties which he is encountering in attempting to get paid for his work.

The township does not contend that the work done by plaintiff was not reasonably worth the amount claimed or that the township did not benefit to the extent of the claim. The town had the legal power to enter into a contract for the construction of the road, such as was here attempted to be made. The agreement between the town board and plaintiff was therefore *ultra vires* in the secondary sense only. We are not dealing with a case where *ultra vires* in the primary sense is involved.

As stated, the township had the power to let a contract to build the township road in question. But in so doing none of the statu-

tory requirements for the letting of such a contract was complied with. The town board by resolution employed plaintiff to do the work, supervised the same, and after its completion by resolution approved and accepted it. Being *intra vires,* or within the powers of the township, the question arises whether plaintiff in quasi contract may recover the reasonable value of the benefits received by the township. The authorities are in conflict. In many jurisdictions, a distinction is made between mandatory and directory statutory provisions. If the violated provisions are considered mandatory, a majority of the courts deny recovery; if directory only, as a general rule recovery for benefits conferred is allowed. Then a conflict arises as to which provisions are mandatory and which are directory. There is even a split of authority as to whether statutory requirements of competitive bidding are mandatory provisions. Then, the further question arises whether recovery is forbidden by the statutes or constitution of the jurisdiction. If in this state any one of the statutory provisions applicable to the letting of a contract is mandatory and this court should say that a violation of mandatory provisions precludes recovery on a *quantum meruit* basis, then clearly in this case there could be no recovery by plaintiff, as all statutory provisions were ignored. In 10 N. Y. U. L. Q. Rev. 68, 72, the writer makes this statement:

"A distinction is often made between mandatory and directory provisions in the charter or statute bearing upon the method of making a contract. A mandatory provision is held to be exclusive and no recovery is allowed for violations of it. A recovery is not denied, on the other hand, for departures from directory provisions. The distinction seems obvious and would probably be accepted by all courts where recoveries in contract are concerned, but it certainly does not account for *quantum meruit* recoveries. The fact in itself that a provision is mandatory bears no relation to a recovery of the reasonable value of benefits received, unless the provision itself can be shown to apply to that kind of action.

\* \* \* \* \*

"A few states like Minnesota allow a recovery in almost any situation within the general powers of the corporation, * * *."

We need not, however, consider and analyze the holdings of other jurisdictions, as this court has several times passed on similar facts. The question submitted to us is not a stranger in this state. This jurisdiction has probably gone further in permitting recovery for benefits received on a quasi-contractual basis, under situations as here, than any other jurisdiction, and its earlier holdings have been criticized. But as is pointed out in several notes in law journals, there is a definite trend to broadening the application of the quasi-contract remedy against municipal corporations. 16 N. Y. U. L. Q. Rev. 494; 36 Mich. L. Rev. 855-860; 21 Neb. L. Rev. 54. In Minnesota Annotations to Restatement, Restitution, § 62, the Minnesota rule is stated as follows:

"* * * the court has been more liberal perhaps than most courts in allowing quasi contractual recovery. The rule as most recently stated 'is that where a municipal corporation receives money or property of another under and pursuant to a contract upon a subject within its corporate powers, and the contract was made and carried out in good faith and without purpose or intent to violate or evade the law, but is invalid because not entered into or ratified by the officers of the corporation having power to contract, or for some other failure to comply with the statutory requirements, and money or property so received is retained by the corporation and devoted to a legitimate corporate purpose, resulting in benefits to the corporation, the one so furnishing the money or property may recover in quasi contract to the extent of the benefits received by the corporation.' "

In First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L.R.A.(N.S.) 84, the municipality failed to comply with the requirements of statutes made essential to a valid contract, in other words it failed to comply with mandatory provisions, and recovery was had against it as upon an implied contract. In that case, plaintiff bank made two loans to the village. Both of them

were illegal and void for the reason that the village council was not authorized to make such a loan of money without first submitting the question to the legal voters for approval, which had not been done. One of the loans was illegal and void for the further reason that the president of the village council was also a managing officer of the plaintiff bank, and was prohibited by law from entering into any contract with the village in which his bank was interested. In doing what he did, he was guilty of a crime. The money received by the village from plaintiff bank was used and expended in the purchase of a site and the erection thereon of a fire and jail building for use of the village. Mr. Chief Justice Brown, writing for the court, said (120 Minn. 366, 139 N. W. 600) :

"In this case the money was loaned to the municipality by plaintiff in good faith, it was paid into the village treasury, and subsequently expended for a purpose authorized by law. * * *

"We are unable to assign a good reason for differentiating between the private and the municipal corporations as respects the rule of justice and common honesty. The private corporation in a case of this kind would not be heard to dispute its liability, nor should a public corporation be permitted to do so where, as in the case at bar, there is no question of fraud or collusion, and no concerted purpose between the village officers and plaintiff intentionally to evade or violate the law.

\* \* \* \* \*

"\* \* \* The foundation of the rule is found in the fact that the municipality has received money or property for a legitimate municipal purpose for which equity and good conscience require payment."

In the earlier case of Village of Pillager v. Hewett, 98 Minn. 265, 107 N. W. 815, the village entered into a contract with defendant to build a bridge. The contract was within the power of the village to make, but it was entered into privately and not upon and after advertisements for bids as required by law. The bridge was built and accepted. The village paid defendant $500 in money and delivered to him its bonds for $1,300. The bridge was afterward

carried away by a flood, not because of any fault of defendant or anyone else. The village sought to recover the sum of $500 paid to defendant and the village bonds it had delivered to him, upon the ground that the contract for building the bridge was void. Mr. Chief Justice Start in the opinion states (98 Minn. 266, 107 N. W. 816):

"* * * It may be conceded that the defendant could not have maintained an action on the contract to recover the contract price for the bridge, although he had fully performed the contract on his part; * * *. After the acceptance of the bridge it became public property, which from its nature could not be restored to the defendant, and, of necessity, the plaintiff would retain and enjoy the benefits thereof so long as it stood. The defendant in good faith received the money and bonds in payment of the bridge which he had built for the plaintiff. The consideration for such payment was full and fair, and, in equity and good conscience, it ought to have been made by the plaintiff. Such being the case, it would be most inequitable and unconscionable to compel the defendant to return the money and bonds paid to him under the circumstances found by the trial court, and we hold that the plaintiff cannot maintain this action to recover them."

In State ex rel. Morris v. Clark, 116 Minn. 500, 503, 134 N. W. 129, 130, 39 L.R.A.(N.S.) 43, a contract for road work for a town was involved. No bond was furnished as required by statute. The work was performed and approved and accepted by the town board. The court in allowing recovery said:

"* * * The statute provides that the contract shall not be valid for any purpose if the bond is not given and approved.

"But conceding that the contract is void, and that it cannot be validated or vitalized, nevertheless it is clear that relator, on full performance of his work and the acceptance thereof by the town, had a moral and legal claim against the town for the reasonable value of his labor and the materials furnished. This is practically

conceded by respondent, and is clearly correct under numerous decisions of this court."

In Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 274, 181 N. W. 584, the contract let by the village for work was void because not let upon competitive bids as required by statute. The contract was one which the village had power to make. This court, in holding that the village should pay the value of what it had received, said:

"The improvement served a municipal purpose and the contract was one that the city had power to make, and, had the essential requirements of the law been complied with, the contract would have been enforceable. In such a situation the village may be compelled to pay the value of what it has received. The express contract disappears from the case. The cause of action arises, not from any contract on the subject, but from the general obligation to do justice which binds all persons, natural and artificial. First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L.R.A.(N.S.) 84. The obligation to pay is measured by the benefit which the village has received."

In Lundin v. Township of Butternut Valley, 172 Minn. 259, 214 N. W. 888, involving a contract to build a bridge, there was no compliance with the statute as to plans and specifications or the furnishing of a bond. It was held that there could be no recovery for the reasonable value of the labor and material furnished, as plaintiff offered no evidence to prove that the town had received any benefit therefrom or had appropriated any part to its beneficial use, the bridge upon which same were expended having collapsed before it was finished or accepted by the town. The court said (172 Minn. 262, 214 N. W. 889):

"This is not a case like Laird Norton Yards v. City of Rochester, 117 Minn. 114, 134 N. W. 644, 41 L.R.A.(N.S.) 473, or First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L.R.A.(N.S.) 84. In the first case the defendant had used and had

had the benefit of the coal furnished, and in the latter defendant had expended for legitimate purposes the money borrowed without lawful authority, so that in both instances the municipality had benefited to the full amount for which a recovery was permitted. Where a contract is void but both parties have acted in good faith, as here, the law permits a recovery to the extent that the municipality has accepted of and benefited by a plaintiff's labor or material. This is held by the cases cited, and to the same effect is Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 181 N. W. 584; Williams v. National Con[tracting] Co. 160 Minn. 293, 199 N. W. 919; Frisch v. City of St. Charles, 167 Minn. 171, 208 N. W. 650. So, under the law, we see no way in which plaintiff may recover of the town either on the contract or for the reasonable value of his work."

In Olsen v. Independent and Consol. School Dist. 175 Minn. 201, 204, 220 N. W. 606, 607, we said:

"The defendant could legally make the contract involved had it first been authorized by the voters. As made, it was void because the requirements of the law were not met. The rule of law applicable to such a situation is that the district is obliged to pay for the reasonable value of any benefits which it receives. Williams v. National Contracting Co. 160 Minn. 293, 199 N. W. 919. The intended contract was not real. Hence the law substitutes the quasi-contractual obligation." (Citing cases.)

In Wakely v. County of St. Louis, 184 Minn. 613, 240 N. W. 103, 84 A. L. R. 920, without authority from the county commissioners, a member thereof purchased clay and sand from plaintiff and used it in improving a county highway. The transaction was invalid, but made in good faith, and without any intention to violate the law. The county benefited by the improvement. The work done and the purchase of material for same were within the powers of the county board. This court held that plaintiff was entitled to recover in quasi contract an amount equal to the benefit that the county received. Three of the justices dissented. Mr. Justice Loring in his

dissent to the original majority opinion said (184 Minn. 617, 240 N. W. 105):

"* * * Had the board authorized the resurfacing and had its employes taken the clay under an unauthorized or illegal contract with plaintiff, I could agree with the majority; but where the project itself was wholly unauthorized, as here found by the trial court, I can see no basis for the doctrine of quasi contract. The county should not be compelled to pay for benefits which it did not want and did not authorize and which in the nature of things it cannot return."

In the instant case, the town board made the contract with plaintiff, and upon completion of the work approved and accepted it. It was an improvement which the town wanted and which it authorized. It failed to comply with the statutory formalities required for the making of a valid contract.

In Mares v. Janutka, 196 Minn. 87, 264 N. W. 222, taxpayers sought to require defendant to restore to the treasury of the city money received by him from the sale to the city of merchandise while he was a member of the city council, which sale constituted a gross misdemeanor. This court held that liability could be enforced *quasi ex contractu*, but not beyond the value of such property to the municipality. In the course of the opinion it was stated (196 Minn. 91, 264 N. W. 224):

"Plaintiffs' argument to the effect that permitting recovery here is a roundabout way of upholding an invalid contract, thereby enabling a municipality to do indirectly that which it cannot do directly, is forceful. But that very argument was fully considered in First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 366, 139 N. W. 599, 601, 43 L.R.A.(N.S.) 84, * * *."

To the same effect, see Lindgren v. Towns of Algoma and Norland, 187 Minn. 31, 244 N. W. 70; Laird Norton Yards v. City of Rochester, 117 Minn. 114, 134 N. W. 644, 41 L.R.A.(N.S.) 473; Frisch v. City of St. Charles, 167 Minn. 171, 208 N. W. 650. Other Minnesota cases are State ex rel. St. Paul Gaslight Co. v. McCardy, 62 Minn.

509, 64 N. W. 1133; Farmer v. City of St. Paul, 65 Minn. 176, 67 N. W. 990, 33 L. R. A. 199; Kreatz v. St. Cloud School Dist. 82 Minn. 516, 85 N. W. 518; Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L.R.A.(N.S.) 793, 120 A. S. R. 621; White v. City of Chatfield, 116 Minn. 371, 133 N. W. 962; Oliver I. Min. Co. v. Independent School Dist. 155 Minn. 400, 193 N. W. 949; Williams v. National Contracting Co. 160 Minn. 293, 199 N. W. 919; Tousley v. Thompson, 166 Minn. 261, 207 N. W. 624. The rule which we follow has been the law of this state for over 40 years, and we fail to see where the interests of the municipalities have been prejudiced or damaged or endangered thereby. By the application of this rule, inequitable and unconscionable results have been avoided. By the application of this rule in the instant case, such result is clearly avoided.

 Although there is no contention that the work performed was not reasonably worth the amount of plaintiff's claim or that the town did not benefit to the extent of the claim, plaintiff is not permitted to recover in full. Section 163.05, which limits the amount a town may raise by taxation for road and bridge purposes, provides:

"The electors of each town shall have power at their annual town meeting to determine the amount of money which shall be raised by taxation for road and bridge purposes, not exceeding 15 mills per dollar on the taxable property of town."

In case of an emergency, an additional five mills may be levied. In view of the statute, the court properly instructed the jury that in no event could plaintiff recover more than the amount which the town was authorized to pay for road and bridge purposes in the year 1945, plus certain items to be hereinafter mentioned. The jury returned a verdict of $3,993.39, which included interest. The court ordered the verdict reduced to $3,886.39 because of too large an allowance for interest.

Under the facts in the case and the law as cited, it is apparent that plaintiff is entitled to recover. Consideration will therefore

be given to the question of the amount to which he may legally be permitted to receive. He would not be entitled to recover in excess of certain available funds. As stated, the electors at the annual town meeting of 1944 voted $6,500 for road and bridge purposes, which amount was cut to $3,500 by the county auditor for reasons stated. Therefore, $3,500 is the amount available out of taxes collected in 1945 for such purposes. Under the 15-mill limitation, $3,795.28 could have been levied—$295.28 more than was actually levied. The court permitted the jury to find that plaintiff was entitled to recover the amount which legally could have been levied, that is, $3,795.28, plus $1,225, the amount donated by benefited property owners, plus the amount in the road and bridge fund immediately after the town meeting of March 1945, minus the amount appropriated for other road and bridge purposes, prior to the making of the agreement with plaintiff, and also minus the $1,500 which he had already been paid. There can, of course, be no dispute that the $1,225 paid in was available to plaintiff. The court calculated that, after deducting the amount allocated by the town board for other road and bridge purposes for work done in 1945 after the town meeting, prior to the making of the contract with plaintiff, there remained $121.03 cash on hand in the fund when the contract with plaintiff was entered into. We shall not recite in detail the evidence on which such amount was arrived at. To take such fund into consideration was entirely proper under Evans v. Town of Stanton, 23 Minn. 368; Great Northern Bridge Co. v. Town of Finlayson, 133 Minn. 270, 158 N. W. 392; and Lindgren v. Towns of Algoma and Norland, 187 Minn. 31, 244 N. W. 70.

■ There remains to be considered the question whether the amount levied, namely, $3,500, is the maximum amount which may be taken into consideration in connection with the payment of this claim, or whether the amount which legally could have been levied, namely, $3,795.28, is such amount. Section 365.43 provides:

"No town shall contract debts or make expenditures for any one year exceeding in amount the taxes assessed for such year, unless

such debt or expenditure is authorized by the vote of a majority of the electors of such town, and no taxes in excess of the amounts authorized by law shall be levied by any town in any one year."

In this case, the $3,500 levied is the ceiling for such expenditures from taxes in 1945, unless the larger amount was authorized by a vote of the electors at the 1944 meeting. At that meeting, as stated, the electors authorized a tax levy of $1,500 for road and bridge purposes and an additional $5,000 for postwar road work. When they voted the $5,000 they had in mind the road in question. Mr. Engen, chairman of the county board, was asked: "Now, this $5,000.00 that was voted on by the people there was intended to be used to construct this road * * *?" He answered: "Yes, to build a road, yes." Then he was asked: "The road that Mr. Kotschevar built?" This was answered in the affirmative. Thus, it would seem that the electors at the annual meeting in March 1944 authorized an expenditure in excess of the $3,500 later levied, but limited by the 15-mill limitation. We so hold. The court was therefore right when it instructed the jury that plaintiff could not recover more than the town was authorized to pay out for road and bridge purposes in the year 1945, and that a 15-mill tax levy would produce $3,795.28.

The total amount plaintiff was allowed on his claim of $11,874.76, undisputed on its merits, was $5,141.31, plus interest. In our opinion, the court did not err, and the result gives plaintiff partial justice.

Order affirmed.

PETERSON, JUSTICE (dissenting).

The authorities cited in the majority opinion, and which it follows, with the exception of the cases of Lindgren v. Towns of Algoma and Norland, 187 Minn. 31, 244 N. W. 70, and Mares v. Janutka, 196 Minn. 87, 264 N. W. 222, either arose under statutory or charter provisions containing no prohibition against letting contracts in any other manner than by a letting to the lowest bidder after advertising for bids, or entirely ignore such prohibition. All of them entirely ignore, as does the majority opinion here, not only the

public policy of the prohibition, which is aimed at waste of public funds, favoritism in letting public contracts, corruption, and graft; but also statutory changes to make that policy effective notwithstanding the decisions of this court nullifying it. In specific terms, the prohibition applies to township officials. The Wakely case (184 Minn. 613, 240 N. W. 103, 84 A. L. R. 920) is an illustration of ignoring the prohibition. The Lindgren, the Mares, and the other cited cases will be discussed *infra*. While the majority takes notice here of the prohibition, the decision in effect nullifies it and gives no sufficient reason for doing so.

1. M. S. A. 160.39 provides that no town shall contract for the construction or improvement of any road where the contract price exceeds $500 unless and until plans and specifications for the work shall have been prepared and filed and an award thereof has been made to the lowest bidder after advertisement as provided in § 164.22. A statute couching a prohibition in negative terms imports a mandate that the act required shall not be done otherwise than as designated. Equitable L. Assur. Society v. Clements, 140 U. S. 226, 11 S. Ct. 822, 35 L. ed. 497 (provision that *no* policy of life insurance *shall be* forfeited under certain circumstances, but shall be subject to commutation); 50 Am. Jur., Statutes, § 29; 59 C. J., Statutes, § 632. As said in Gomez v. Timon, 60 Tex. Civ. App. 311, 314, 128 S. W. 656, 657:

"* * * Prohibitory words can rarely if ever be directory. There is but one way to obey the command *'thou shalt not,'* which is to abstain altogether from doing the act forbidden."

In Lundin v. Township of Butternut Valley, 172 Minn. 259, 214 N. W. 888, we in effect so construed the statutes in question so far as they relate to bridge contracts, but without discussion of the principles compelling such decision. So here, because the statute says in effect that no town shall let a contract for road construction for a contract price exceeding $500 without advertising for bids, it not only *prohibits* a town from letting such a contract without ad-

vertising for bids, but also in effect from letting it in any other manner.

The fact that the statute contains such a prohibition is of the utmost importance in determining the right of a town not only to contract, but to incur liability at all (Zottman v. San Francisco, 20 Cal. 96, 81 Am. D. 96; Village of Fort Edward v. Fish, 156 N. Y. 363, 50 N. E. 973; McDonald v. Mayor, etc., 68 N. Y. 23, 23 Am. R. 144), as will be shown later.

2. While the statute (§ 160.39) *prohibits* the letting of such a contract without advertising for bids and in effect prohibits the letting of such a contract in any other manner, and while the statute does not in express terms prohibit recovery in quasi contract for work done contrary to its provisions, the statute by clear implication prohibits such recovery.

To begin with, the law will not imply a promise or base a quasi-contractual liability upon an act prohibited by law. Macy v. City of Duluth, 68 Minn. 452, 71 N. W. 687; Zottman v. San Francisco, *supra;* McDonald v. Mayor, etc., *supra.* In Stone v. Bevans, 88 Minn. 127, 129, 92 N. W. 520, 521, 97 A. S. R. 506, holding that a village could recover money paid to one of its officers in violation of statute notwithstanding the fact that the services were meritorious and beneficial, we said:

"The purpose of this statute is plain, and the contract, being within its express prohibition, was void, and cannot be made the basis of a valid contract relation."

And as Mr. Justice Field (then chief justice of the California court) said in the Zottman case, *supra,* in holding that a city was not liable in quasi contract for work done under a contract void for failure to advertise for bids (20 Cal. 106):

"* * * What they [the city officials] thus had no authority to agree in advance to pay for the work, they had no authority to agree to pay after the work was completed. * * * *The law never implies an agreement against its own restrictions and prohibitions,* or as it is expressed in the New York case [Brady v. Mayor, etc., 16 How.

Pr. 432, 446], 'the law never implies an obligation to do that which it forbids the party to agree to do.' " (Italics supplied.)

Such a statute is a limitation on the power of town officials to contract—it prescribes the *only* method of making such a contract and of incurring liability for such work. Reams v. Cooley, 171 Cal. 150, 152 P. 293, Ann. Cas. 1917A, 1260. Tooke, *Quasi-Contractual Liability of Municipal Corporations,* 47 Harv. L. Rev. 1143, 1144-1145. In the Reams case the court said (171 Cal. 154, 152 P. 294) :

"* * * Under such circumstances the express contract attempted to be made is not invalid merely by reason of some irregularity or some invalidity in the exercise of a general power to contract, but the contract is void because the statute prescribes the *only* method in which a valid contract can be made, and the adoption of the prescribed mode is a jurisdictional prerequisite to the exercise of the power to contract at all and can be exercised in no other manner so as to incur any liability on the part of the municipality. *Where the statute prescribes the only mode by which the power to contract shall be exercised the mode is the measure of the power. A contract made otherwise than as so prescribed is not binding or obligatory as a contract and the doctrine of implied liability has no application in such cases."* (Italics supplied.)

The consensus of the authorities is that the public policy of such a statute is to protect the public against improvident and wasteful expenditure of public funds, favoritism in letting contracts, corruption, and graft, and that to make such policy effective the statute not only requires public bidding, but also in effect prohibits public officials from incurring liability in any other way—much less by plain violation of the statute itself. Reams v. Cooley, *supra;* Federal Paving Corp. v. City of Wauwatosa, 231 Wis. 655, 286 N. W. 546; 6 Williston, Contracts (Rev. ed.) § 1786A; Restatement, Restitution, § 62.

The rule of the overwhelming weight of authority is summed up in 43 Am. Jur., Public Works and Contracts, § 95, as follows:

"It is well established that no recovery can be had by a contractor for the construction of a public improvement or other contract with a public body made by public authorities without compliance with the provisions of law requiring letting of such contracts upon competitive bidding, even though such contract is duly executed and signed and the work has been executed in accordance with its terms. *Not only is the contract itself illegal and unenforceable, but the general rule is that there is no implied liability on the part of the municipality or other public body with which such contract was attempted to be made for work to be done or materials furnished pursuant thereto, for the reasonable value of the services or materials, even though the public body has received the benefits of such performance.* These provisions exist to protect citizen taxpayers from unjust, ill-considered or extortionate contracts, or those showing favoritism, and if the public body is suffered to disregard them and the other party permitted to recover upon an implied contract, such provisions can always be evaded and set at naught. To depart from these principles would be to open the door to abuses and practices fraught with danger to the welfare of the citizens and taxpayers of municipalities and political subdivisions of the state." (Italics supplied.)

3. In addition to the public policy implicit in the statute (§ 160.39) itself, other statutes manifest a strong public policy that officials must perform their duties in strict accordance with statute. Sections 612.04 and 613.51 declare malfeasance in office to be a gross misdemeanor punishable by both fine and imprisonment. Since misdeeds of an official affecting performance of his duties constitute malfeasance (State ex rel. Martin v. Burnquist, 141 Minn. 308, 170 N. W. 201, 609), there can be no doubt that incurring liability for work without the letting of a contract after first advertising for bids where the statute so requires, as here, constitutes malfeasance in office.

It is the policy of the state not only to ferret out such irregularities and others, but to bring the offenders to justice by providing

for laying the facts before the proper prosecuting officials and making it their duty to prosecute the offenders. An elaborate machinery is set up for the purpose by M. S. A. c. 215, creating the office of public examiner and making it the duty of that official to discover such crimes and to cause the offenders to be prosecuted. Section 215.14 makes the chapter specifically applicable to towns. There can be no doubt that the public examiner's office was created to make effective the public policy of the state embodied in other statutes to prevent dishonesty, fraud, favoritism, and wasteful expenditure of public funds. It is a matter of common experience that the prohibited transactions have their inception in what those concerned therein euphemistically call "harmless" deviations from "technical" rules. In every case they justify wrongdoing as having been done in "good faith." Everyone knows that such justifications reveal an obtuse indifference to duty and are only a mask to cover manifest wrongs committed. The purpose of the statute creating the public examiner's office was to make sure that, where the policy of suppressing such wrongs and punishing such wrongdoers is not made effective at the local level, it should be done by the intervention of the state itself through the public examiner.

4. While it may seem trite to say so, it is the plain and mandatory duty of the court to give effect to the statute (§ 160.39), regardless of whether its policy meets with the court's approval. As said in State ex rel. City of St. Paul v. M. St. P. & S. S. M. Ry. Co. 190 Minn. 162, 165, 251 N. W. 275, 277:

"* * * Judges have neither higher function, nor more pressing duty, than to ascertain and give full scope to declared legislative policy when within the competency of the enacting body."

5. We have held, and properly so, that in construing a statute the court should not so construe it as to permit a thing to be done indirectly which cannot be done directly (Dayton v. Corser, 51 Minn. 406, 53 N. W. 717, 18 L. R. A. 80) or so as to practically nullify the statute (North Shore F. & F. Co. v. North Shore B. M. T. Assn. 195 Minn. 336, 263 N. W. 98). 6 Dunnell, Dig. § 8947. To hold that

there can be a recovery in quasi contract in a case such as this has precisely such a result. Zottman v. San Francisco, 20 Cal. 96, 81 Am. D. 96, *supra*. In McDonald v. Mayor, etc., *supra*, the court said (68 N. Y. 28):

"* * * Here there is an express legislative inhibition upon the city, that it may not incur liability unless by writing and by record. How can it be said that a municipality is liable upon an implied promise, when the very statute which continues its corporate life, and gives it its powers, and prescribes the mode of the exercise of them, says, that it shall not, and hence cannot, become liable, save by express promise? * * * It is plain, that if the restriction put upon municipalities by the legislature, for the purposes of reducing and limiting the incurring of debt and the expenditure of the public money, may be removed, upon the doctrine now contended for, there is no legislative remedy for the evils of municipal government, which of late have excited so much attention and painful foreboding. *Restrictions and inhibition by statute are practically of no avail, if they can be brought to naught by the unauthorized action of every official of lowest degree, acquiesced in, or not repudiated, by his superiors.*" (Italics supplied.)

Similar expressions by other courts are quoted in the footnote.[2]

---

[2]Edison Elec. Co. v. City of Pasadena (9 Cir.) 178 F. 425, 431:

"The positive prohibition of a statute can no more be avoided by evasion than it can be violated directly. A citation of authorities upon so plain a proposition is unnecessary. So, too, is the law well settled that where, as in the cases between these parties here under consideration, the contract upon which suit is brought is forbidden by statute, the acceptance of benefits raises no implication of an obligation. The law is not properly chargeable with the absurdity of implying an obligation to do that which it forbids."

Bay v. Davidson, 133 Iowa 688, 693, 111 N. W. 25, 27, 9 L.R.A.(N.S.) 1014, 119 A. S. R. 650:

"That the town has received the benefits of the contract is not material."

McGovern v. City of Boston, 229 Mass. 394, 397, 118 N. E. 667, 669:

"As the city cannot be chargeable upon an express contract entered into in contravention of the statute, it is equally plain that no recovery can be

Our cases holding that the plaintiff is entitled to recover the reasonable value of work done have gone so far as to hold in Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 181 N. W. 584, that the illegally let contract is evidence of the reasonable value. As a practical proposition under that rule, plaintiff, under the guise of recovering for the reasonable value, recovers the agreed price under the illegally let contract. Thus, recovery under the contract and recovery for the reasonable value of the work are the same— one differs from the other in the same degree as does tweedledum from tweedledee. By permitting such recovery, our cases have not

had upon an implied contract: to permit such recovery would be to defeat one of the purposes for which the statute was enacted. To allow the plaintiffs to recover upon a *quantum meruit* would be contrary to the spirit as well as to the letter of the statute, and would be in plain disregard of its terms. * * * The statute evidently was enacted to safeguard the interests of the defendant; it cannot be evaded or annulled, and must be held to be in full force and effect. Nor can it be regarded as permissive rather than mandatory, or as vesting in the commission a discretionary power to disregard its clearly expressed intent.

"* * * Nor are they [plaintiffs] entitled to recover upon a *quantum meruit* because the defendant has had the benefit of the work."

Bartlett v. City of Lowell, 201 Mass. 151, 155, 87 N. E. 195, 197:

"If the court were to adopt that result *it would be putting the seal of the law upon a plain evasion* of St. 1896, c. 415, § 3; and if that be law all statutes imposing limitations upon the creation of municipal indebtedness can be evaded by a person who is not a contractor delivering personal property, and after that property has been used so that it cannot be restored, claiming to be paid the reasonable value of it." (Italics supplied.)

Cawker v. Central Bitulithic Paving Co. 140 Wis. 25, 29, 121 N. W. 888, 889:

"* * * To now hold that the city might, without compliance with such provisions, ratify the contract and so validate it, or that the appellant might, notwithstanding the invalidity of the contract on this ground, go on and complete it and recover upon *quantum meruit,* would be to make these charter provisions practically ineffective. Former decisions of this court forbid such recovery by the appellant."

See, Appleton Waterworks Co. v. City of Appleton, 132 Wis. 563, 570, 113 N. W. 44, 47.

only made an absurdity of the statute, but also have entirely nullified it. Such a result is not only wholly unjustifiable, but flows from a clear failure of the court to perform its duty with respect to the enforcement of the statute.

6. Our decisions do not square with the well-settled rules which have been stated. They teem with errors, of which only a few will be mentioned.

To begin with, by permitting a recovery in quasi contract they have entirely nullified the statute requiring advertisement for bids and letting of the contract to the lowest responsible bidder. This has already been made abundantly clear.

The keystone error is the fundamental one that the receipt of a benefit without more creates quasi-contractual liability. This error is the basis for such decisions as Village of Pillager v. Hewett, 98 Minn. 265, 107 N. W. 815; First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L.R.A.(N.S.) 84; Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 181 N. W. 584; Wakely v. County of St. Louis, 184 Minn. 613, 240 N. W. 103, 84 A. L. R. 920; Lindgren v. Towns of Algoma and Norland, 187 Minn. 31, 244 N. W. 70.

Next, the court in cases like Lindgren v. Towns of Algoma and Norland, *supra,* and Mares v. Janutka, 196 Minn. 87, 264 N. W. 222, applied to municipal corporations the rule applicable to private corporations, that, if a contract was not *ultra vires* in a primary sense, it might be the basis for quasi-contractual liability without considering the question whether the doctrine of liability under *ultra vires* contracts had any application at all where the contract. was a *prohibited* one. The applicability of the doctrine of *ultra vires* to such contracts was also mentioned in Laird Norton Yards v. City of Rochester, 117 Minn. 114, 134 N. W. 644, 41 L.R.A.(N.S.) 473, and First Nat. Bank v. Village of Goodhue, *supra.*

In the Laird Norton Yards case, *supra,* the court held that city charter provisions requiring such a contract to be let to the lowest bidder after advertisement are void as being in conflict with

the equitable principle allowing quasi-contractual recovery in such cases *(sic)*.

Our decisions subsequent to the Fargo Foundry Co. case (148 Minn. 273, 181 N. W. 584) failed entirely to take notice of and to give effect to the change made in the prior statute by L. 1921, c. 323, § 55 (§ 160.39), substituting a provision *prohibiting* letting by towns of such road construction and improvement contracts without first advertising for bids in place of the one merely *requiring* that such contracts be so let.

The statutory and charter provisions involved in the Village of Pillager, Bell,[3] Laird Norton Yards, and Fargo Foundry Co. cases merely provided that such contracts should be let to the lowest responsible bidder after advertisement. The First Nat. Bank case involved a loan by a village from a bank without first submitting to the voters the question whether it should be made. None of them, as here, involved a statutory provision *prohibiting* the letting of such contracts except in such manner. The prohibition was enacted as to towns in 1921 by L. 1921, c. 323, § 55.

The Bell case did not involve the question of the city's liability in quasi contract for goods or services received under a contract not so let, but rather the validity of a contract for the construction of a sewer let without first securing the right of way as required by city charter. Decision turned on an application of the doctrine of *ultra vires*. The Lindgren and Wakely cases arose under a statute prohibiting the contracts there involved, but did not consider the effect of the prohibition, and were decided by applying the doctrine of *ultra vires,* merely citing prior cases in which the existence of the doctrine was recognized and without considering the propriety of its application to those cases. In the Mares case the question was considered, but decision was based on application of the doctrine of *ultra vires* and an untenable distinction between benefits received from furnishing goods and those received from furnishing services. The case of Frisch v. City of St. Charles, 167 Minn. 171, 208 N. W.

---

[3]Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L.R.A.(N.S.) 793, 120 A. S. R. 621, cited in the majority opinion.

650, contains dicta reaffirming what was said in prior cases as to liability in quasi contract for benefits received, but went off on the proposition that there the city had not received the benefits claimed to give rise to such liability.

None of our decisions disclose any judicial perception of the public policy underlying the statute. Rather, they disclose a lack thereof. In the Laird Norton Yards, First Nat. Bank, and the Fargo Foundry Co. cases, as in the instant one, the requirements as to advertising for bids and awarding the contract to the lowest responsible bidder were referred to as *formalities* relating to the making of contracts. While such characterization is an admirable example of extreme understatement, it is to be deprecated as involving fundamental legal misconception. As has been pointed out, such statutory requirements are limitations upon the power to contract and to incur liability, and embody an important fundamental public policy (see the Zottman, Reams, and McDonald cases, and 43 Am. Jur., Public Works and Contracts, § 95, *supra)*, and should not be thus lightly brushed aside.

Our decisions discussing quasi-contractual liability failed to consider the nature of such liability and whether such cases came within the rules governing the question. Quasi-contractual liability is imposed only where the retention of benefits received would be *inequitable,* but not otherwise.[4] Independent School Dist. v. City of White Bear Lake, 208 Minn. 29, 292 N. W. 777; Mehl v. Norton, 201

---

[4]Quasi-contractual liability is not consensual, but rather one imposed by law according to equity and justice. The history of quasi contract shows that common-law judges borrowed principles of equity from chancery and administered them as such in common-law actions in assumpsit. Caparo v. Propati, 127 N. J. Eq. 419, 13 A. (2d) 318; 4 Am. Jur., Assumpsit, §§ 3, 10; Restatement, Restitution, Part I, Introductory Note; Ames, *The History of Assumpsit,* 2 Harv. L. Rev. 1. At common law, quasi-contractual liability was based upon principles of equity and enforced in the common-law action of assumpsit. While the liability was of an equitable nature and the remedy to enforce it was a legal one at law, the action at law proceeded like a bill in equity, for which it was a substitute. Herrmann v. Gleason (6 Cir.) 126 F. (2d) 936, 939, where the court said that, while the action is "legal in form," it is "equitable to the core."

Minn. 203, 275 N. W. 843, 113 A. L. R. 1055. In the particular case, the question is whether equity and justice demand the imposition of liability. Todd v. Bettingen, 109 Minn. 493, 124 N. W. 443. Mere receipt of a benefit alone is insufficient. Mehl v. Norton, *supra;* Bjelland v. City of Mankato, 112 Minn. 24, 127 N. W. 397, 140 A. S. R. 460; Stone v. Bevans, 88 Minn. 127, 92 N. W. 520, 97 A. S. R. 506, *supra;* Macy v. City of Duluth, 68 Minn. 452, 71 N. W. 687; Young v. Board of Education, 54 Minn. 385, 55 N. W. 1112, 40 A. S. R. 340. "The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." Restatement, Restitution, § 1c. Where, as here, a statute prohibits the making of the contract, it is neither equitable nor just to impose such liability, for the reason that to do so permits that which cannot be done directly to be done indirectly, and thus practically nullifies the statute. Edison Elec. Co. v. City of Pasadena (9 Cir.) 178 F. 425; Zottman v. San Francisco, 20 Cal. 96, 81 Am. D. 96; Bay v. Davidson, 133 Iowa 688, 111 N. W. 25, 9 L.R.A.(N.S.) 1014, 119 A. S. R. 650; McGovern v. City of Boston, 229 Mass. 394, 118 N. E. 667; Bartlett v. City of Lowell, 201 Mass. 151, 87 N. E. 195; McDonald v. Mayor, etc., 68 N. Y. 23, 23 Am. R. 144; Cawker v. Central Bitulithic Paving Co. 140 Wis. 25, 121 N. W. 888, all *supra.* Our cases holding that naked receipt of a benefit creates quasi-contractual liability are clearly erroneous. This misconception, first introduced in the Village of Pillager case, has been followed without question in later ones. The court in considering the question has never reached the question whether in justice and equity—in good conscience—retention by the municipality of such a benefit was a reason for imposing quasi-contractual liability. And how could it so hold? To hold that a transaction conceived in violation of law and of strong public policy appeals to the conscience and sense of justice of the court involves legal incongruity. Under well-settled rules and according to the overwhelming weight of authority, there is no basis for quasi-contractual liability in such cases.

The doctrine of *ultra vires,* relied on in some cases as a rule creating liability and referred to in others as having such effect, has no

application where, as here, the statute *prohibits* the alleged *ultra vires* act. In re Grand Union Co. (2 Cir.) 219 F. 353, 363; United Order of Good Samaritans v. Meekins, 155 Ark. 407, 244 S. W. 439, 28 A. L. R. 89; Mitchell v. Hart, 107 Ind. App. 548, 25 N. E. (2d) 665; In re Mutual Guaranty F. Ins. Co. v. Barker, 107 Iowa 143, 77 N. W. 868, 70 A. S. R. 149; Bath Gas Light Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664; 7 Fletcher, Cyc. Corp. (Perm. ed.) § 3595.

In 13 Am. Jur., Corporations, § 755, the rule is stated as follows:

"Another principle of general recognition is that a corporation cannot enter into, or bind itself by, a contract which is expressly prohibited by its charter or by statute; and in the application of this principle it is immaterial that the contract, except for the prohibition, would be lawful. *No one is permitted to justify an act which the legislature, * * * has declared shall not be performed.* An illegal contract in the sense of malum in se or malum prohibitum is beyond the power of anyone to make, corporation or private individual. *It has accordingly been stated that the doctrine of ultra vires has no application to contracts of private corporations the making of which is prohibited by statute.*" (Italics supplied.)

The Mares case, and perhaps others, holding that a *prohibited* act may be held legal under the doctrine of *ultra vires,* misapply the doctrine. They reach the absurd result that an act may give rise to legal rights even though it is prohibited by law. Plainly, the doctrine can have no application here, because § 160.39 *prohibits* the acts on which plaintiff would predicate liability.

The Mares case also makes an untenable distinction between furnishing goods and services.

The actor's so-called "good faith" affords no basis for imposing liability. In his dissent in Wakely v. County of St. Louis, 184 Minn. 613, 623, 240 N. W. 103, 107, 84 A. L. R. 920, Mr. Justice Stone pointed out that so-called "good faith" is immaterial, saying:

"* * * Good faith is said to be 'an important element.' That, together with the receipt of benefit, is said to make out a prima

facie case. What authority there is for such a conclusion is not indicated. My search has failed to disclose any."

Neither counsel nor the majority have cited any authority for such a conclusion. Certainly, so-called "good faith" would be immaterial in a criminal prosecution. State v. Edwards, 94 Minn. 225, 102 N. W. 697, 69 L. R. A. 667; State v. Heck, 23 Minn. 549; 2 Dunnell, Dig. & Supp. § 2409. As said in Ellis v. United States, 206 U. S. 246, 257, 27 S. Ct. 600, 602, 51 L. ed. 1047, 1053, 11 Ann. Cas. 589:

"* * * The argument against the instruction is that the word 'intentionally' in the statute requires knowledge of the law, or at least that to be convicted Ellis must not have supposed, even mistakenly, that there was an emergency extraordinary enough to justify his conduct. The latter proposition is only the former a little disguised. Both are without foundation. If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent."

To say that plaintiff here acted in "good faith" involves the incongruity that a lawbreaker may act in "good faith." According to the authorities, other than our own, cited above, such conduct has no appeal to a court's sense of equity or justice and consequently affords no basis for quasi-contractual liability.

Under our rule, the court on the criminal side would deal with those involved in the illegal contract as lawbreakers, subject to fine and imprisonment, entirely deaf to their claims of "good faith," and on the civil side, attentive to such claims, its "conscience," or its sense of justice and equity, if such they could be called under the circumstances, would be moved to grant them a right to recover. In effect we would be lenient (at the expense of the taxpayer) where we should be severe. Justice and consistency require that such parties be treated as lawbreakers both in civil and criminal actions. The obvious absurdity of our rule offends both common sense and justice.

The authorities considered and cited by this court in adopting the rule of quasi-contractual liability raise a serious question as to whether adequate consideration was given to well-settled principles. At the time the Village of Pillager and our other cases were decided, such cases as Argenti v. City of San Francisco, 16 Cal. 256; Zottman v. San Francisco, 20 Cal. 96, 81 Am. D. 96, *supra;* McDonald v. Mayor, etc., 68 N. Y. 23, 23 Am. R. 144, *supra;* Moore v. Mayor, etc., 73 N. Y. 238, 29 Am. R. 134, and numerous other cases, had been decided. Those, other than the Argenti case, settled the law as it has been stated above. The Argenti case was overruled in the Zottman case. The Moore case is not in point upon this precise question, because it did not involve the question whether a contract let without first advertising for bids was valid, but rather the one whether municipal authorities have power to ratify a contract irregularly let; but the court reaffirmed the rule of the McDonald case, decided only a short time previously, holding that there is no quasi-contractual liability in a case like this, and made it clear that it did not intend to hold that acts done under a *prohibited* contract can be the basis of any rights by stating (73 N. Y. 248) that it did not intend "to intimate that a contract *expressly forbidden by statute,* * * * can be ratified by the corporate authorities." (Italics supplied.) In effect, it reaffirmed the rule of the McDonald case as to *prohibited* contracts. See, Tooke, *Quasi-Contractual Liability of Municipal Corporations,* 47 Harv. L. Rev. 1143, 1157, *et seq.* This great body of law was entirely ignored in our prior decisions, except that in the First Nat. Bank case the Argenti case was cited, and in the Laird Norton Yards case the Moore case was cited. One thing is plain—that is, that the court in its prior decisions failed to consider pertinent authorities. While the citation in the First Nat. Bank case of the overruled Argenti case and in the Laird Norton Yards case of the Moore case, which really is authority for the rule contrary to the one we adopted, would almost lead one to believe that the court had "culled" the authorities for a few to bolster its view, we know that the fact is to the contrary. But the undeniable fact is clear that

such citation reveals that the entire question was inadequately considered, and, because that is true, an erroneous result was reached.

Aside from the fact that the Laird Norton Yards case, so far as it holds that a municipal corporation cannot by charter legislate concerning the letting of public contracts, was overruled *sub silentio* in Rand Kardex Service Corp. v. Forrestal, 174 Minn. 579, 219 N. W. 943, and is in direct conflict with the rules laid down in cases such as City of Duluth v. Cerveny, 218 Minn. 511, 16 N. W. (2d) 779, and others there cited (see, Mitchell v. City of St. Paul, 228 Minn. 64, 36 N. W. [2d] 132), it is not pertinent in considering the effect of a statute, because obviously the legislature has the power to prescribe the applicable rule.

Finally, and what seems worst of all, is that by failure of the court in its decisions subsequent to the change in statute in 1921, substituting a *prohibition* against letting such contracts without first advertising for bids in place of the *requirement* of the prior statute that they be so let, to take notice of and to give effect to the *prohibition,* the court has not only failed to discharge its plain duty of giving effect to the statute, but has effectually nullified it. Ordinarily, a change in statutory law betokens a change in meaning. In re Estate of Galbraith, 210 Minn. 356, 298 N. W. 253; 6 Dunnell, Dig. § 8997. The change made by the 1921 law was one of substance. The *prohibition* therein against letting such contracts except after first advertising for bids embodied the rule, then well-settled and established by the authorities, that a statutory or charter provision *prohibiting* the letting of public contracts except to the lowest responsible bidder after advertisement for bids not only regulates and limits the power of officials to contract, but also to incur liability. McDonald v. Mayor, etc., 68 N. Y. 23, 23 Am. R. 144, and Zottman v. San Francisco, 20 Cal. 96, 81 Am. D. 96, *supra.* In effect, the legislature not only repudiated the rule of our prior decision law, but also changed it. Consequently, it is our plain duty to give effect to the rule prescribed by the statute.

I think that some of our decisions are also unsound on other grounds, but enough has been said to show that all of them are unsound in principle.

7. In conclusion, our prior decisions should be overruled so far as they are in conflict with the well-settled principles which have been stated. While the doctrine of *stare decisis* is entitled to great weight and should not be departed from except for urgent reasons, it is no dead hand on the law and is not to be applied mechanically. A postulate, implicit in the doctrine, is that decisions, even a whole series of them, which are clearly erroneous and which were inadequately considered, should not only be reëxamined without reluctance, but also that they should be overruled. Park Const. Co. v. Independent School Dist. 209 Minn. 182, 296 N. W. 475, 135 A. L. R. 59; State v. G. N. Ry. Co. 106 Minn. 303, 119 N. W. 202. After all, cases should be decided according to law, and courts should not only balk at perpetuating and compounding error, but also should as a duty to the bar and the public eradicate it from the law. See, 14 Am. Jur., Courts, § 125.

This is a case for departure from the doctrine of *stare decisis*. Our prior decisions are not only erroneous, illy considered, and lacking in adequate research, but also judicially nullify a statute enacted to accomplish important public purposes. Those are adequate reasons for overruling them.

In conclusion, I think that we should reverse.